## AMER. PAVEMENT CO. v. LOUIS WAGNER.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 19, 1891—Decided February 2, 1891.
[To be reported.]

1. The duties imposed upon the authorities of cities, by § 6, act of May 23, 1874, P. L. 233, providing that all work and materials required by a city shall be done and furnished " under contract, to be given to the lowest responsible bidder," are not merely ministerial, but are deliberative and discretionary: Commonwealth v. Mitchell, 82 Pa. 343.

2. If the officer in whom the function of awarding contracts is lodged, accepts any one of several bids, he is bound by law to give the contract to the lowest responsible bidder, and a court of equity might enjoin the execution of a contract awarded, without sufficient legal cause, to any other bidder, especially if the act was accompanied by evidence of bad faith and unfairness.

3. But the officer will not render himself individually liable to the lowest bidder by rejecting all bids offered, in the honest and judicious exercise of his discretion, for no one is legally entitled to the contract until it is legally awarded to him, the submission of a bid under the statute being similar, in legal effect, to a bid at an auction sale, where the seller is bound by law to sell to the highest and best bidder.

4. At all events, when the director of public works of Philadelphia, in an advertisement inviting proposals, expressly reserved the right to reject any or all bids, he had a right, in the exercise of his judgment and dis-

cretion, acting in good faith in the interest of the city, to reject all the bids offered, and advertise for new proposals upon modified specifications.

5. And, by so doing and awarding the contract to the lowest responsible bidder under the second set of specifications, the director did not render himself liable for the prospective profits of one who was the lowest bidder under the original specifications, and, insisting on his right to the contract and offering to conform to the new specifications, refrained from bidding the second time.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

. No. 14 July Term 1890, Sup. Ct. ; court below, No. 32 June Term 1888, C. P. No. 4.

On May 29, 1888, the American Artificial Stone ·Pavement Company, Limited, brought assumpsit against Louis Wagner, to recover damages for a refusal by the defendant, acting as the director of public works of the city of Philadelphia, to award to the plaintiffs, as the lowest responsible bidders, a contract for certain public work in said city, and for subsequently awarding such contract to another person, in violation, as was alleged, of the plaintiff company's rights.

At the trial, on November 13, 1889, the following facts were shown upon the part of the plaintiffs :

On December 31, 1886, the councils of Philadelphia, by ordinance, made an appropriation for extensions in the water department, and under that ordinance the defendant, who was the director of the department of public works, advertised on May 17, 1887, inviting proposals for the lining of a certain section of the East Park reservoir, reserving " the right to accept or reject any or all bids, as he may deem best for the interests of the city."

The specifications furnished to bidders defined the work to be done as the covering of the bottom and the inside slopes of the embankment, to within twenty feet of the top, with a coating of concrete five inches in thickness, and, thence to the top of the slope, with bricks laid on edge, in cement two inches in thickness.    The specifications stated the estimated quantities of concrete and brick lining that would be required, and contained the following provisions :

" The contractor is bound to adopt any change of plans that

may be deemed advisable, and an allowance shall be made for or against him, as the case may be, the amount of such allowance to be determined by the chief of the bureau of water, and stated in writing previous to the work being executed. Such alterations will not annul the contract except as to such altered parts. No extras will be allowed. The estimated quantities may be increased or decreased."

On May 31, 1887, the bids received for the work were opened, when the plaintiffs were found to be the lowest bidders, their offer being to do the brick work for $2.87 per square yard, and the concrete work for $1.23 per square yard, the price of the entire work at these figures, amounting to $65,934.15. The defendant accepted none of the bids made at that time.

On July 20, 1887, the defendant again advertised for proposals for the same work. This time the specifications were substantially identical with those on which the bids of May 31, 1887, were based, except that alternative bids were invited for the lining of the entire slopes with bricks laid on edge, bedded in cement, instead of carrying the concrete work up to within twenty feet of the top. Bids were to be received until August 2d, at noon.

On July 30, 1887, the plaintiffs, who made no bid under the advertisement of July 20th, filed a bill in equity against the defendant, praying that he be decreed to award the contract for said work to the plaintiffs, upon their bid furnished under the advertisement of May 17th, and that he be enjoined from awarding any contract therefor under the advertisement of July 20th. The bill averred the plaintiffs' willingness, " under this bid, and in accordance with the specifications providing for the increase or decrease of the quantities," to line the entire slope with bricks on edge, bedded in cement. On the same day, July 30th, the plaintiffs' counsel notified the defendant, in writing, of the filing of that bill. The defendant, notwithstanding, went on, received bids, and awarded to Lewis Grant, who was the lowest responsible bidder, a contract for lining the reservoir in accordance with the second of the alternative modes mentioned in the specifications, to wit, by covering the slopes from top to bottom with bricks bedded in cement. Grant's contract was duly performed by him, and the amount which he became entitled thereunder to receive from the city was

$59,155.53. The compensation for doing the work in the same way, at the prices previously bid by the plaintiffs, would have been $78,493.27.

After the work had been done by Grant, the defendant filed an answer, and a supplemental answer, to the bill filed against him by the plaintiffs, averring inter alia, in substance, that the bid of the plaintiffs, and all other bids submitted at the same time, were rejected under the right to do so reserved in the advertisement inviting proposals, such rejection not being made arbitrarily, but because the director of public works deemed it best for the interests of the city; that, by the authority and with the approval of the committee on water of the city councils, the specifications were changed and an advertisement for new bids made, with a view to obtain a lining superior to that contemplated in the first specifications, such change being, in the judgment of said committee and also in the judgment of the defendant, best for the interests of the city, and the result of re-advertising for this work was a saving to the city of nearly $20,000. The suit in equity was never proceeded with to final decree.

The damages laid in the plaintiff's statement of claim, as the profits that would have accrued, if the contract had been awarded to them by the defendant, were $19,337.74. James A. Mundy, president of the plaintiff company, testified, inter alia, on their behalf that, " If the contract had been given, we would have made a clear profit of about $17,000."

At the close of the testimony for the plaintiff the court, WILLSON, J., on motion of the defendant, entered judgment of compulsory nonsuit, with leave, etc.; exception. A rule to show cause why the judgment of nonsuit should not be lifted having been argued before the court in banc, the rule was discharged, opinion by WILLSON, J.; whereupon, the plaintiffs took this appeal, specifying the order entering the judgment of nonsuit, for error.

*Mr. David W. Sellers*, for the appellants :

1. Under the statutes providing for bids for public work, the law secures the contract to the lowest responsible bidder, unless cause be shown against it, which, in the judgment of a legal tribunal, is sufficient: § 26, act of May 13, 1856, P. L.

Arguments.

568; McKinley v. Philadelphia, 6 Phila. 123; Kerr v. Philadelphia, 8 Phila. 292; § 6, act of May 23, 1874, P. L. 233; Gutta Percha Co. v. Stockely, 11 Phila. 219; Commonwealth v. Mitchell, 82 Pa. 343; Addis v. Pittsburgh, 85 Pa. 37,9; Douglass v. Commonwealth, 108 Pa. 563; Campbell v. Philadelphia, 15 Phila. 141. The cases of Yealy v. Fink, 43 Pa. 212, and Burton v. Fulton, 49 Pa. 151, relied on by the court below, do not support its ruling. The former was a suit against a supervisor for building a causeway which he had undoubted authority of law to build. The latter was an action against school directors for the dismissal of a teacher, and it could not be maintained, because teachers hold their places at the pleasure of the directors: Field v. Directors, 54 Pa. 233.

2. If, after receiving the bids, the city had concluded to abandon or postpone the work, or to prosecute it upon a different plan, a sufficient cause for not awarding the contract to the plaintiffs would be shown. But the defendant is not the city. He could not of his own will, and according to his caprice, abandon, postpone or prosecute, upon plans not approved by his principal. His second advertisement was a manifest attempt to deprive the plaintiffs of the benefit of their bid under the first advertisement, without any cause. The variation in the specifications effected no real change, the first specifications having provided that " the estimated quantities may be increased or decreased," and having bound the contractor " to adopt any change of plans that may be deemed advisable." His excuse that, by opening the sealed bids and giving others the benefit of the unsealing, a saving was effected, is not a legal justification. And the illegal act of the defendant was the act of himself as an individual officer, not authorized by the city, and the liability is his alone. Even if the water committee did approve the act, they were without power to represent the city in so doing: Articles XIV., XVI., act of June 1, 1885, P. L. 37. The measure of damages, when one is deprived illegally of a contract, is the profit he certainly would have made, if he had been allowed to perform it: Railroad Co. v. Howard, 17 How. 326; Lentz v. Choteau, 42 Pa. 437.

*Mr. Charles B. McMichael* (with him *Mr. Charles F. Warwick*, City Solicitor), for the appellee:

This is an extraordinary case. A public officer is sued, not for negligence in office, nor for corruption, nor for misfeasance, nor for improvidently entering into contracts by which the public money has been wasted, but for simply exercising the option which he reserved to himself, to reject all bids if he deemed it best for the municipality whose officer he was, and for refusing to award the contract to any of the bidders.

OPINION, MR. JUSTICE CLARK:

This action of assumpsit, under the statute, was brought by the American Artificial Stone Pavement Company, Limited, against Louis Wagner, to recover damages alleged to have been sustained from the failure or refusal of the defendant, as the director of the department of public works of the city of Philadelphia, to award to the company a contract for lining a section of the East Park reservoir. The city councils having, by ordinance of December 31, 1886, appropriated $300,000 to extensions in the water department for the year 1887, the defendant, in his official capacity, on March 18, 1887, advertised for proposals on or before 12 o'clock noon of May 31, 1887, to do the work according to certain specifications furnished, the director reserving to himself, however, " the right to accept or reject any or all bids, as he may deem best for the interests of the city." The specifications provided for " the covering of the bottom of the south division of this reservoir, and the inside slopes of the embankment, to within twenty feet of the top, with a coating of concrete five inches in thickness, and from thence to the top of the slope, with bricks laid on edge, in cement two inches in thickness." Several proposals were received, but none of them was accepted. The plaintiff company offered to complete the work at the rate of $2.87 per square yard for brick, and $1.23 per square yard for the concrete, amounting to $65,934.15, and was the lowest bidder.

The director of public works having rejected all the offers made, afterwards, on July 20, 1887, gave notice by advertisement that he would receive other proposals until 12 o'clock noon of August 2, 1887, according to specifications which provided for the execution of the work in the same manner as by the specifications of March 18, 1887, but which, in addition thereto, provided that, instead of lining the reservoir with con-

crete to within twenty feet of the top, the entire slope might
" be lined with bricks on edge, bedded in cement," the option
to be with the department.

The plaintiff, insisting upon his right as the lowest bidder,
did not bid a second time.   When the last bids were received,
opened, and scheduled, Lewis Grant was found to be the low-
est responsible bidder, and the contract was awarded to him:
the city, exercising the option, required the entire slope to be
lined with bricks on edge, bedded in cement.   The prices
named in the plaintiff's bid, applied to the work as it was
actually performed, would have amounted to $78,493.27;
whereas, the amount of Grant's bid and the amount he re-
ceived under his contract, was $59,155.53, which was a saving
to the city of $19,337.74, and this is the exact sum for which
the plaintiff declares, as damages, in this suit.

No fraud is charged in the plaintiff's statement of claim, nor
is there any evidence of fraud.   The theory of the plaintiff's
case is that, as by the sixth section of the act of May 23, 1874,
P. L. 233, all work and materials required by the city must be
done and furnished " under contract, to be given to the lowest
responsible bidder," the bidder whose bid is the lowest, and
whose responsibility is not objected to, is thereby legally en-
titled, under the statute, to a contract accordingly, whether
the bid be accepted and the contract awarded or not, and that
the officer who refuses to accord this right is individually liable
in damages for the loss of profits sustained thereby.

There is no averment or proof that the first bids were invited,
or, when opened, were used, for any improper purpose, or that
they were used corruptly to promote the interest or advantage
of any personal or political friend, or to put the plaintiff at any
disadvantage in the subsequent bidding; for anything that
appears, the director of public works exercised the privilege
reserved in good faith, acting in behalf of the city whose in-
terests he was bound to protect.   If he had accepted any one
of the first bids, he was bound by law to give the contract to
the " lowest responsible bidder," and a court of equity would
have enjoined him from doing otherwise.   But if, upon open-
ing these bids, he believed them to be extravagant in amount,
or the work, upon the basis of the specifications, to be unwise
and against the public interest, it was his right to refuse them

all, and to invite other proposals, upon the same and other specifications, which would give the city the option to award the contract according to the public interest. In the honest and judicious exercise of this discretion, we cannot see upon what principle of the law he could render himself individually liable to the lowest or to any other bidder, for no one is legally entitled to the contract until it is legally awarded to him : Commonwealth v. Mitchell, 82 Pa. 343. The submission of a sealed bid or proposal to the city for the furnishing of labor or materials, under the statute, is in all respects similar in its legal effect to a bid at an auction sale, where the seller is bound by law to sell to the highest and best bidder. The bid is a mere offer to buy at the price named, and may be retracted at any time before it is accepted ; and it follows, of course, that the vendor has the same right to reject the offer and withdraw the article from sale, that the bidder has to withdraw his bid. But it must be rejected before acceptance, and not afterwards. In this case, the director of public works expressly reserved the right, and, without having previously accepted any of them, he rejected all.

If the law were not as we have stated it, as suggested by the learned judge of the court below, it would not be possible, after the reception of the bids and the ascertainment of the cost, for any projected public improvement to be abandoned or postponed, or to be prosecuted on a different plan, however imperative might be the reasons therefor. No matter that the bidding disclosed the financial inability of the municipality to complete the work ; no matter that a proper economy, in view of the amount of money required, demanded a modification of the contract, or a postponement, or even the entire abandonment of the scheme, if the appellant's contention is correct the work must go on, the lowest bidder being legally entitled under his offer. If the law were so declared, then, indeed, would the city be in a helpless state ; for, if bidders should come to an understanding beforehand, it might be obliged to pay for labor and materials the most extravagant and enormous amounts, thus providing a fund, for distribution among themselves, far in excess of any reasonable profit.

If the contract had been awarded to any other than the lowest responsible bidder, upon a bill to enjoin the execution of it

Opinion of the Court.

the city authorities would doubtless be required to assign and show a sufficient legal cause, especially if the act was accompanied by evidence of bad faith and unfairness.   The interests of the city, as well as the rights of individuals, might seriously suffer at the hands of a dishonest and unfaithful official, who would avail himself of the advantage of his position corruptly to favor his friends.   Such a course would discourage bidders, and destroy all honest and fair competition.   Practices of this kind cannot be too harshly condemned; but we are not at liberty to assume fraud, unfairness, or favoritism without proof, and there is not the slightest evidence that the defendant in this transaction was actuated by any other motive than the promotion of the best interests of the city.

The duties imposed upon the city authorities, under the act of 1874, are not merely ministerial; if they were, their performance might be compelled by mandamus.   But, in Commonwealth v. Mitchell, supra, a writ of mandamus was refused to the lowest bidder, upon the ground that the act imposes duties that are deliberative and discretionary, and that, as this discretion appeared to have been exercised according to the best judgment of the officer in whom this function was lodged, a writ of mandamus could not be granted.   To the same effect are the cases of Findley v. Pittsburgh, 82 Pa. 351; Douglass v. Commonwealth, 108 Pa. 559 ; Yealy v. Fink, 43 Pa. 212; and Burton v. Fulton, 49 Pa. 151.

The director of public works had an undoubted right, in the exercise of his judgment and discretion, and acting in good faith in the interest of the city, to refuse to accept any of the bids tendered on May 31, 1887.   Having done so, he had a right at another time to solicit other bids upon the same and upon different specifications, and to accept the lowest of all the bids, by a responsible bidder, under the specifications which he should regard as most favorable to the public interest.   His judgment could not be coerced by mandamus, nor was his discretion to be exercised under the fear of individual responsibility for the prospective profits of disappointed bidders.

The judgment is affirmed.