Highway Express Lines, Inc., Appellant, *v.* Winter.
Holt, Appellant, *v.* Tate.

Argued March 23, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Louis J. Goffman,* with him *Howard Gittis,* and *Wolf, Block, Schorr and Solis-Cohen,* for appellant, in No. 241.

*David S. Malis,* with him *Malis, Malis & Malis,* for appellant, in No. 244.

*James L. Stern,* Second Deputy City Solicitor, with him *Ellis A. Horwitz* and *Mark M. Mendel,* Assistant City Solicitors, and *Edward G. Bauer, Jr.,* City Solicitor, for appellees.

OPINION BY MR. JUSTICE JONES, May 11, 1964:

In November 1963, the City of Philadelphia (City), issued an invitation to trucking firms to bid on a pro-

posed contract with the City for hauling surplus food distributed under the auspices of the Department of Public Welfare. These invitations stated that bids would be publicly opened on November 27, 1963, and, included in the specifications for potential bidders, was the requirement that such bids be accompanied by evidence of *approved* rate tariffs for the bidder since the service or equipment involved was regulated by the Pennsylvania Public Utility Commission (Commission).

At the opening of bids on November 27, 1963, Highway Express Lines, Inc. (Highway) was the low bidder with a bid of $147,086.10.[1] Accompanying its bid, Highway's tariffs—on file with the Pennsylvania Public Utility Commission—indicated that such tariffs were marked "Issued: November 15, 1963", but, under Rule 2(b) of "Tariff Regulations for Carriers" issued by the Commission, a change of tariffs could not be made unless the rate had been in "operation and effect" for at least thirty days. The Procurement Department of the City decided that Highway had not qualified as a bidder because the thirty-day tariffs period had not expired at the time of bidding, i.e., November 27, 1963, and such period would not expire until December 15, 1963; therefore, Highway's bid, failing to conform to bidding specifications, was rejected. The Procurement Department then determined that it was in the best interest of the City to reject all bids and that the contract should be re-bid. In so doing, the City relied on Section 8-200 (2) (b), of the Philadelphia Home Rule Charter which provides, inter alia: ". . . the [Procurement] Department may reject all bids if it shall deem it in the interest of the City so to do," and Section 9 of the "Conditions of Bidding" which, inter alia, provided: "The Procurement Com-

---

[1] Holt, the next lowest bidder, was approximately $12,000 higher than Highway.

missioner may make an award for all or some of the items set forth in the proposal. In his discretion, he may reject all of the bids filed."

The City then issued new invitations to bid on this contract and, in connection with such invitations, issued the following bidding specification: "Bids must be accompanied by effective tariff or rights which were filed with the Pennsylvania Public Utility Commission no later than December 1, 1963, and will be official tariffs whose effective date is on or before January 1, 1964." On December 30, 1963, at the opening of the new bids, Holt's Motor Express (Holt), was the low bidder with a bid of $137,608.50. However, the tariffs, which accompanied Holt's bid, had not been filed with the Commission until December 2, 1963, and could not become effective until January 2, 1964. Again, the Procurement Department of the City rejected all bids on the ground that the low bidder was disqualified in that its bid did not conform to the tariff specifications and it was not in the best interest of the City to accept the next lowest bidder and decided to re-bid the contract. It is to be noted that Highway submitted a bid at this second bidding.[2]

Highway and Holt then instituted separate equity actions in the Court of Common Pleas No. 5 of Philadelphia County wherein each requested that the court enjoin the appropriate City officials from re-bidding this contract and require that the City officials execute a contract in conformity with the bid each had presented on the several dates. On behalf of the City officials, preliminary objections were filed averring: (1) that, under the Philadelphia Home Rule Charter of the City and the "Conditions of Bidding", the City had discretion to reject all bids and that, in the absence of evidence of any fraud or collusion, its decision was

---

[2] Highway was the next highest bidder.

binding, (2) that each plaintiff had an adequate remedy at law for damages and (3) that, for a court to direct the awarding of a contract, under the circumstances, would constitute an unwarranted interference by the judiciary with the executive branch of the City. The court below, in separate orders, upheld the preliminary objections and dismissed each complaint. From such orders, these appeals were taken.

Holt raises three questions: (1) did the City have an absolute right to reject all bids and call for new bids? (2) does Holt have a right to have the contract awarded to it in the absence of any assigned reason for rejection of its bid other than an absolute right to reject all bids? (3) whether the City has an absolute right to reject a bid made by the lowest responsible bidder? Highway raises three questions: (1) whether Highway, allegedly twice the lowest responsible bidder, has standing to enjoin the City from abusing its discretion in directing another re-bid of the same contract? (2) whether the City abused its discretion in rejecting Highway's low bid when Highway's bid complied fully with the specifications? (3) whether the City abused its discretion in not awarding the contract to Highway as the lowest responsible bidder?

Section 8-200 (2) (b), *expressly* gives to the Procurement Department of the City the right to reject *all* bids, if such action is deemed in the best interest of the City, and Paragraph 9 of the "Conditions of Bidding"—under which both Highway and Holt submitted their bids—*expressly* gives the Procurement Commissioner the power, in his discretion, to reject all of the bids submitted.

In the case at bar, Highway and Holt do not allege that the action of the City in rejecting the bids was either fraudulent or collusive or that its failure to award a contract on either date was contrary to the best interests of the City. Both complaints are based

upon the theory that the City acted without any legal reason, cause or justification and abused its discretion.

A reading of the appropriate provision of the Home Rule Charter and the provisions attendant on the bidding, supra, clearly indicates that the City had complete and plenary discretion to reject any and all bids in the City's best interests. Our decisional law, moreover, affirms and supports the existence of such discretion: *American Pavement Co. v. Wagner,* 139 Pa. 623, 21 A. 160; *Straw v. Williamsport,* 286 Pa. 41, 132 A. 804; *R. S. Noonan, Inc. v. York School District,* 400 Pa. 391, 162 A. 2d 623. In *Straw,* supra, this Court said (p. 43) : ". . . The advertisement reserved the right to reject any or all bids or parts of bids, and that is conclusive of the question." It is clear beyond question that if the officials of the City, in the exercise of their discretion, decide that it is in the best interest of the City to reject all bids and to re-advertise for new bids, the City has the power to do so, absent any fraud of collusion motivating such action.

Both Highway and Holt were made fully aware of the requirement that the rate to be charged for the services contemplated by the contract had to be in accordance with tariffs approved by the Public Utility Commission, and they should have been aware that, under the Commission's regulations, full and final approval of any such tariffs could not be given until thirty days after such tariffs were issued. Neither Holt nor Highway complied with this condition of the bidding. The City was justified in rejecting their bids on the ground that they failed to comply with a specific condition of the bidding.

It was argued that the City had no discretion to refuse to award a contract to the lowest responsible bidder. Such is the law, generally (*Kratz v. Allentown,* 304 Pa. 51, 155 A. 116; *Pearlman v. Pittsburgh,* 304 Pa. 24, 155 A. 118) but presently inapposite. In each in-

stance in the case at bar, the lowest responsible bidder failed to qualify, i.e., did not comply with the specifications as to rate tariffs in the bidding conditions; the City very properly refused to award a contract under such circumstances to the bidders and its rejection of all bids and its direction of a re-advertising for bids were eminently proper.

Lastly, neither Highway nor Holt have any status to take these appeals. As disappointed and unsuccessful bidders, they have no standing to request the judicial award of a public contract. Their reliance on *Heilig Bros. Co., Inc. v. Kohler,* 366 Pa. 72, 76 A. 2d 613, is misplaced. It is obvious, that *Heilig* turned on the fact that Heilig was not only an unsuccessful bidder but also occupied the status of a taxpayer.[3] *R. S. Noonan, Inc. v. York School District,* supra, clearly rules the instant situation in this respect. As this Court said in *Noonan* (p. 394) : " 'By their bid they [the unsuccessful bidder] proposed to contract for certain work; that bid was not accepted. It was a mere proposal that bound neither party, and as it never was consummated by a contract, the city acquired no right against the relators nor they against the city. [The unsuccessful bidder] [is] wanting in a specific remedy only because [it] had failed to establish a legal right. The injury, if any, resulting from the rejection of their bid, fell upon the public and not upon them personally. It may be that, if they had obtained the contract, they might have made a profit, but the law takes cognizance of neither speculative contracts nor speculative damages, but only such as are fixed and definite. Where

---

[3] In *Heilig,* supra, we said: "The present action in substance is a taxpayer's bill." As we said in *Noonan* (p. 395) : "No personal benefit accrued to Heilig . . . . It only shared in the benefits which accrued to the community as the result of cancelling a conveyance which had been obtained through breach of trust of public officials."

there is no contract there is no law, legem enim contractus dat.' "

For the reasons stated, the court below acted with propriety in upholding the City's preliminary objections and dismissing both complaints.

Orders affirmed. Costs on Highway and Holt in their respective appeals.