**SOVEREIGN CONSTRUCTION COMPANY, LTD.**

v.

**CITY OF PHILADELPHIA.**

Civ. A. No. 77–739.

United States District Court, E. D. Pennsylvania.

Oct. 31, 1977.

Herman J. Obert, Philadelphia, Pa., for plaintiff.

Stephen T. Saltz, Asst. City Sol., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiff, Sovereign Construction Company, Ltd., brought this diversity action against the City of Philadelphia to resolve a dispute arising out of the City's handling of bids for construction work on the Preliminary Treatment Building at the City's Northeast Water Pollution Control Plant. As will appear from the statement of facts below, nearly two years have elapsed since the City received bids on the work in question. To date the City has not awarded a contract for this work to any bidder. Early construction of the Preliminary Treatment Building will clearly be in the public interest. Therefore, although I have carefully considered the arguments presented by both parties, I will issue only a brief opinion in order that the ultimate resolution of this controversy may be hastened.

The case is before me on the City's motion for judgment on the pleadings, Fed.R. Civ.P. 12(c), and so "all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false." 2A Moore's Federal Practice ¶ 12.15, at 2343 (2d ed. 1948) (collecting cases) (footnote omitted). With this background in mind, the essential facts of this case are as follows.

Pursuant to its published invitation for bids, the City, on December 16, 1975, received and opened nine bids, including one submitted by plaintiff, for work on the Preliminary Treatment Building. Complaint ¶¶ 7, 11. This project is seventy-five percent federally funded, pursuant to Title II of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. §§ 1281–1293 (Supp. V 1975). Plaintiff's bid of $20,779,100 was the lowest bid received by the City. *Id.* ¶ 12. Because of an alleged "imbalance" in plaintiff's bid, the City then sought to "rebid" the project. Plaintiff secured the intervention of the EPA's Regional Administrator for Region III, who advised the City that EPA grant regulations required the City to afford plaintiff an opportunity to express its views. *See* 40 C.F.R. § 35.939(d) (1976). Following a meeting between the City and Sovereign, the City's Procurement Commissioner on April 9, 1976 reaffirmed his initial decision to reject all bids and to "rebid" the project. *Id.* ¶¶ 14–15. Sovereign again turned to the EPA for redress. On December 6, 1976, a detailed written "Determination of Regional Administrator"[1] was handed down. After considering and rejecting the City's argument that Pennsylvania law rather than federal law should govern the bid dispute,[2] the Regional Administrator concluded: "For the foregoing reasons I sustain the protest of Sovereign Construction Company, Ltd., and hereby reverse the determination of the City of Philadelphia to reject all bids." The EPA grant regulations preclude any further administrative appeal from this

1. This appears in the record as Exhibit A to Plaintiff's Answer to Defendant's Motion.

2. The City relied on 40 C.F.R. §§ 35.936–2 and 35.936–10 (1976) in support of its position.

Determination. 40 C.F.R. § 35.939(e)(3) (1976). Notwithstanding the Administrator's Determination, "the City has refused and continues to refuse to award Sovereign a contract" for the construction work. Complaint ¶ 21.

Sovereign filed this complaint on March 1, 1977, alleging that the City's actions are arbitrary and capricious, violative of the Federal Water Pollution Control Act Amendments of 1972, violative of EPA regulations, violative of Pennsylvania law, and an abuse of discretion, and seeking an order requiring the City to award it the contract for the Preliminary Treatment Building. *Id.* ¶¶ 26, 33. The City filed an answer, and subsequently filed this motion seeking, *inter alia*, judgment on the pleadings.

 In their memoranda of law, the parties focus on the "well-settled rule" of Pennsylvania law that an unsuccessful bidder may not sue to secure an award of the disputed contract. *Weber v. Philadelphia*, 437 Pa. 179, 181 n. 2, 262 A.2d 297, 299 (1970) (separate footnote of Jones, J.); *see, e. g., Pullman, Inc. v. Volpe*, 337 F.Supp. 432, 442 (E.D.Pa.1971). Plaintiff seeks to circumvent this rule by (1) restating it as a rule of standing, and (2) arguing that the federal law of standing should control in this case. To this end, plaintiff relies on such decisions as *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 373–75, 424 F.2d 859, 861–73 (1970), and *Darin & Armstrong, Inc. v. United States Environmental Protection Agency*, 431 F.Supp. 456 (N.D.Ohio), *vacated mem. and remanded*, 542 F.2d 1175 (6th Cir. 1976), which involved standing to sue in federal-question cases under the Administrative Procedure Act. These decisions do not aid plaintiff, however, because the Pennsylvania rule adverted to earlier is not only a rule of standing, but also a rule of substantive law. As stated in one recent opinion of the Pennsylvania Supreme Court, the rule is that "a disappointed bidder has sustained no personal injury which entitles him to redress in court." *Noonan, Inc. v. York School Dist.*, 400 Pa. 391, 394, 162 A.2d 623, 625 (1960), *quoted with approval in Weber v. Philadel-*

*phia*, 437 Pa. 179, 181 n. 2, 262 A.2d 297, 299 (1970) (separate footnote of Jones, J.). In short, a disappointed bidder has no cause of action under Pennsylvania law. *Accord, Commonwealth ex rel. Snyder v. Mitchell*, 82 Pa. 343, 350–51 (1876) (alternative holding). Accordingly, plaintiff could not prevail on a state law theory even if I were to determine that plaintiff has standing in this case. I therefore need not decide whether state or federal law controls on the issue of "prudential" standing in this diversity case. *See generally Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Plaintiff also seeks to avoid this rule of law through the following argument:

"Plaintiff is not suing as a disappointed bidder. It sues to preserve its legal right as the lowest responsible bidder on a federal funded construction project entitled, by federal and state law to an award of the contract, and so determined to be by the Environmental Protection Agency. Plaintiff sues for an award of that contract which is being denied to it by the defendant, acting by and through its Procurement Commissioner, who has by an abuse of discretion and for divers other reasons, arbitrarily and capriciously refused to award a contract to Sovereign for construction of the Project." Plaintiff's Memorandum of Law Contra Defendant's Motion, at 2.

As I understand it, the argument is that a bidder who is legally entitled to the award of a contract and is wrongfully denied that award cannot be viewed as a "disappointed bidder," because that term applies only to a bidder who (1) is *not* the lowest responsible bidder, and (2) is therefore not awarded the contract. Plaintiff's restrictive interpretation of the term "disappointed bidder" is at odds, however, with the interpretation given that term by the Pennsylvania Supreme Court. In *Noonan, Inc. v. York School District*, 400 Pa. 391, 162 A.2d 623 (1960), for example, the court considered a dispute growing out of the District's invitation for competitive bids on the construction of a

new school building. Plaintiff, Noonan, Inc., was the lowest bidder on the project. The District then rejected all bids, solicited new bids, and awarded the contract to another firm that submitted the lowest bid on the second round. Noonan, Inc., alleging that the District "was guilty of bad faith, arbitrary action, and abuse of discretion in rejecting its bid," sought an order that the contract be awarded to it instead. 400 Pa. at 393, 162 A.2d at 624. Justice Musmanno's opinion for the court stated the controlling principle in this fashion: "As early as 1876, this Court held . . . that a disappointed bidder has sustained no personal injury which entitles him to redress in court." 400 Pa. at 394, 162 A.2d 625. Justice Musmanno's discussion of *Heilig Bros. Co. v. Kohler*, 366 Pa. 72, 76 A.2d 613 (1950), also confirms that the term "disappointed bidder" embraces any unsuccessful bidder, i. e., any bidder who was not awarded the contract at issue. *See Highway Express Lines, Inc. v. Winter*, 414 Pa. 340, 346, 200 A.2d 300, 303 (1964) (by implication). The unavoidable conclusion is that Sovereign Construction Company is here as a disappointed bidder; Sovereign therefore has no cause of action against the City under Pennsylvania law.

■ Sovereign also asserts that its legal rights under the Federal Water Pollution Control Act Amendments of 1972 and under the EPA grant administration regulations have been violated by the City's actions. Sovereign points to no specific regulation or statutory provision as the source of its federal cause(s) of action, and, indeed, has not invoked this court's federal-question jurisdiction. I have examined the 1972 Amendments in light of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and I have concluded that no private right of action in a disappointed bidder may be implied from the Amendments. In *Cort*, the Supreme Court stated:

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted).

These four factors may be applied to the 1972 Amendments in a straightforward fashion. First, the 1,766-page legislative history is utterly devoid of any indication that Congress enacted Title II of the Amendments for the *especial* benefit of private contractors working on projects funded under that title. *See* Senate Comm. on Public Works, Federal Water Pollution Control Act Amendments of 1971, S.Rep. No. 92–414, 92d Cong., 1st Sess. (1971); House Comm. on Public Works, Federal Water Pollution Control Act Amendments of 1972, H.R.Rep. No. 92–911, 92d Cong., 2d Sess. (1972).[3] Second, although the legislative history does not address this issue, the absence from the Amendments' broad provision on citizen suits of any colorable authorization for a private right of action in a disappointed bidder gives rise to an inference that Congress did not intend to create such a right. *See* 33 U.S.C. § 1365 (Supp. IV 1974). Third, the purpose of Title II— the development of treatment works that will satisfy the Amendments' very rigorous timetable for pollution reduction[4]—would almost certainly be frustrated by the cre-

---

3. Both the House and the Senate reports are reprinted in Environmental Policy Division of the Congressional Research Service of the Library of Congress, 93d Cong., 1st Sess., A Leg-

islative History of the Water Pollution Control Act Amendments of 1972 (Comm.Print 1973).

4. *See* 33 U.S.C. § 1281(a) (Supp. IV 1974); *id.* § 1251(a) (Supp. IV 1974).

ation of an additional[5] avenue of review of grantees' bid decisions, for such review could work to delay the construction of a treatment plant while a disappointed bidder pursued his remedies. Fourth, a federal right of action against a state or municipal grantee would be anomalous, if not inappropriate, since state and municipal contracts have traditionally been governed by state law. Although contracts funded in part by the federal government under Title II of the Amendments are not traditional contracts, I am not persuaded that the injection of federal dollars into a contract between a city and the low bidder requires all issues of procurement law that arise out of that contract to be determined by federal law, absent a federal statute or regulation that expressly or impliedly requires such a result. Thus, upon consideration of the four *Cort v. Ash* factors, I conclude that no private right of action in a disappointed bidder may be implied from the 1972 Amendments.

■ Any argument that the EPA grant regulations themselves support an implied private right of action runs up against (1) the question whether the EPA has the power to create by regulation a new cause of action, and (2) the enforcement provision of the EPA grant regulations, which spells out various sanctions (not including actions by bidders) to be imposed on an uncooperative grantee.[6] As the second issue is dispositive, I need not address the first. The enforcement provision of the EPA regulations, set out in note 6, *supra,* clearly contemplates that the Regional Administrator alone shall

determine what sanctions, if any, are to be imposed on a grantee for noncompliance with other EPA regulations. Moreover, the regulation does not purport to expand the range of available judicial remedies; rather, it states that the Regional Administrator may, if he deems it "appropriate," pursue such remedies. In short, part 35 of the EPA regulations affords no basis for implying a private right of action in a disappointed bidder.

■ Sovereign in effect seeks enforcement of the Regional Administrator's Determination in its favor. It therefore cannot rely on the Administrative Procedure Act for its cause of action, as Sovereign is plainly not "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702 (1970), *as amended by* Act of Oct. 21, 1976, Pub.L. No. 94–574, 90 Stat. 2721. Absent a statutory provision giving Sovereign an express or implied right of action, I have no authority to "enforce" the Regional Administrator's Determination against the City.

As a practical matter, the EPA will undoubtedly have the final word in this matter, inasmuch as a federal grant is providing seventy-five percent of the funds needed to complete the Preliminary Treatment Building. The Regional Administrator may decide that the City's actions warrant the imposition of one or more of the sanctions listed in the EPA grant administration regulations, 40 C.F.R. § 35.965 (1976). From Sovereign's perspective, this potential ad-

5. *See* 40 C.F.R. §§ 35.939, 35.965 (1976).

6. The enforcement provision of the EPA regulations is as follows:
"§ 35.965 *Enforcement.*
Noncompliance with the provisions of this subpart shall be cause for any one or more of the following sanctions, as determined appropriate by the Regional Administrator:
(a) The grant may be terminated or annulled pursuant to § 30.920 of this subchapter;
(b) Project costs directly related to the noncompliance may be disallowed;
(c) Payment otherwise due to the grantee of up to ten percent (10%) may be withheld (see § 30.615–3 of this subchapter);

(d) Project work may be suspended pursuant to § 30.915 of this subchapter;
(e) A noncomplying grantee may be found nonresponsible or ineligible for future Federal assistance or a noncomplying contractor may be found nonresponsible or ineligible for approval for future contract award under EPA grants;
(f) An injunction may be entered or other equitable relief afforded by a court of appropriate jurisdiction;
(g) Such other administrative or judicial action may be instituted as may be legally available and appropriate."

ministrative enforcement is understandably less satisfactory than prompt injunctive relief. Furthermore, from the standpoint of the public interest in reducing or eliminating water pollution, early construction of the Preliminary Treatment Building is of the utmost importance. I cannot, however, recognize a private right of action where neither Congress nor the EPA has done so.

Because Sovereign has failed to state a claim (under either federal or Pennsylvania law) upon which relief can be granted, the City is entitled to judgment in its favor. The City's motion for judgment on the pleadings will be granted, and judgment will be entered for the City. *See* Fed.R. Civ.P. 12(h)(2).