# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Louis Troiano d/b/a Green Way-Consulting, LLC, and Green Way Consulting, LLC, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 1730 C.D. 2019 |
| | : | Submitted: April 12, 2021 |
| Thomas Farley, Esq., Individually and in His Official Capacity as Solicitor of Pike County and Delaware Township, and Delaware Township, and Pike County, and Pike County Commissioners, and Richard Caridi, Individually and in His Official Capacity as Commissioner of Pike County, and Matthew Osterberg, Individually and in His Official Capacity as Commissioner of Pike County, and Karl Wagner, Individually and in His Official Capacity as Commissioner of Pike County, and John Does 1-10 | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
HONORABLE MARY HANNAH LEAVITT, Judge (P.)
HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**                    **FILED:  May 28, 2021**


Appellants Louis Troiano d/b/a Green Way-Consulting, LLC, and Green Way

Consulting, LLC (collectively, Green Way), appeal from an order of the Court of

Common Pleas of Pike County (common pleas), granting summary judgment in favor of Pike County (County) and Richard Caridi, Matthew Osterberg, and Karl Wagner, individually and in their capacities as Commissioners of Pike County (collectively, Commissioners). Common pleas concluded that Green Way failed to state a substantive due process claim protected by the Fourteenth Amendment to the United States Constitution and, therefore, could not maintain a civil action under 42 U.S.C. § 1983 (Section 1983) against the County and the Commissioners.[1] For the reasons that follow, we affirm.

## I. BACKGROUND

Pennsylvania's Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101)[2] requires each county in Pennsylvania to adopt and periodically revise a waste management plan for municipal waste and to submit the plan to the Pennsylvania Department of Environmental Protection (DEP) for approval. Green Way, a waste consulting and recycling services company, filed a civil action under Section 1983 against the County and the Commissioners (and various other individuals)[3] pertaining to the County's plan to adopt a recycling program.

In its third amended complaint (Complaint), setting forth claims against the County and the Commissioners only,[4] Green Way averred that, in early 2012, the

---

[1] By order dated November 7, 2019, the Superior Court transferred this matter to the Commonwealth Court.

[2] Act of July 28, 1988, P.L. 556, *as amended*, 53 P.S. §§ 4000.101-.1904.

[3] The names of the original defendants are set forth in the caption of this matter.

[4] Green Way filed a writ of summons against the County and the Commissioners, as well as various other defendants, in May 2014 and filed its first complaint in June 2014. (Reproduced Record (R.R.) at 1a-2a.) The named defendants filed multiple sets of preliminary objections, ultimately leading to Green Way filing its first amended complaint in July 2014, its second amended complaint in August 2014, and its third amended complaint in December 2014. (R.R. at 2a-4a.)

County released a request for proposals for the handling of the County's recycling (RFP). (R.R. at 10a, ¶ 6.) Green Way and another entity submitted proposals on or about March 28, 2012. (*Id.*, ¶¶ 6, 7.) On or about May 16, 2012, the County rejected all bids in order to "further review the program." (*Id.*, ¶¶ 8, 9.) Green Way averred that it was the lowest bidder. (*Id.*, ¶ 7.)

Green Way also averred that, around the time that the County issued the RFP, it presented plans to the Delaware Township Board of Supervisors to locate a recycling center within the township in anticipation of the contract bid. (*Id.*, ¶ 4.) Several residents of Birchwood Lakes Community, which is located adjacent to Green Way's proposed recycling center, inquired about the proposal. (*Id.*, ¶ 5.) Green Way characterized their questions as "adversarial." (*Id.*) On or about May 15, 2012, just before the County rejected all bids, Green Way's engineer contacted Delaware Township's Zoning Officer regarding the recycling project. (*Id.*, ¶¶ 8, 9.) Despite the County's rejection of all bids and cancellation of its existing recycling program, Green Way continued to pursue a recycling center in Delaware Township. (R.R. at 11a, ¶¶ 10, 11.) On or about November 13, 2012, Green Way presented its plans to the Delaware Township Zoning Hearing Board (ZHB) for a recycling center. (*Id.*, ¶ 15.) On or about December 28, 2012, the ZHB denied Green Way's request for a special exemption. (R.R. at 12a, ¶ 18.) Green Way did not appeal, believing that such action would be futile. (*Id.* at 12a, ¶ 19.)

Green Way further averred that, on or about August 15, 2012, the County ended its existing recycling program—allegedly in violation of the County's own waste management plan and Act 101. (R.R. at 11a, ¶ 12.) Thereafter, Green Way took steps to notify DEP of the alleged violation of Act 101 and attempted to pursue the matter through the administrative process with DEP. (*Id.*, ¶¶ 14, 21, 22.)

Eventually, DEP and the County agreed that Green Way would be notified when the County reinitiated a plan under Act 101, at which time Green Way could appeal to DEP's Environmental Hearing Board. (*Id.*, ¶ 23.)

Ultimately, Green Way averred that the County's ending of its previous recycling plan did not advance any legitimate government interest; rather, the County (through the Commissioners) ended the program as a pretext to prevent Green Way from locating a recycling center near the Birchwood Lakes Community in violation of Green Way's rights. (*Id.*, ¶¶ 26, 27.) As a result, Green Way averred it suffered significant harm. (*Id.*, ¶ 29.) Throughout the Complaint, Green Way characterized the actions of the County and Delaware Township, largely through their solicitor, Thomas Farley, Esquire, as hostile toward Green Way's plans for a recycling center. Based upon these averments, Green Way asserted various counts against the County and Commissioners, alleging that they violated Section 1983.

Setting aside the characterizations regarding the actions of government officials and their intentions regarding Green Way's proposed recycling center, the parties do not appear to dispute the basic factual averments. The parties developed additional facts throughout the course of discovery, relating, in part, to the County's recycling program before it was eliminated, Green Way's bid, Green Way's proposed recycling center, the County's decision to eliminate its recycling program, Green Way's communications with other townships regarding the County's elimination of its recycling plan, the proceedings before the ZHB, and DEP's involvement with the County's waste management plan as it relates to Act 101. Notably, the parties appear to have agreed that the County rejected the bids without having reviewed them. The County and the Commissioners maintained, however, that the County did so to review other recycling options in order to determine

4

whether the County should move from a drop-off recycling program to a curbside recycling program, which would negate the need for the RFP at issue. Contrarily, Green Way maintained that the County and the Commissioners rejected the bids and ended its recycling program as a pretext to stop Green Way's recycling center from being located near the Birchwood Lakes Community.

Upon the completion of discovery, the County and Commissioners filed a motion for summary judgment. (R.R. at 150a-325a.) Green Way, when it filed its opposing memorandum of law to the motion for summary judgment, withdrew four of the five counts in the Complaint, leaving remaining only the count that the County and Commissioners violated Green Way's procedural and substantive due process rights by rejecting its bid as a pretext to stop its recycling center project. (R.R. at 326a-85a; 329a ¶ 20.) By order dated August 26, 2019, common pleas granted the County's and Commissioners' motion for summary judgment and dismissed the Complaint with prejudice. (Trial Ct. Order, dated August 26, 2019.) With regard to Green Way's substantive due process claim, common pleas observed that, "[i]n this Commonwealth, a disappointed bidder such as [Green Way], has no right to be awarded a contract and, consequently, no right protected by the Fourteenth Amendment to the United States Constitution."[5] (Trial Ct. Op. at 8.) Common pleas concluded that Green Way's claim brought pursuant to Section 1983 failed because Green Way did not have a substantive due process right

---

[5] In reaching this conclusion, common pleas relied upon our decision in *Premier Comp Solutions, LLC v. Department of General Services*, 949 A.2d 381 (Pa. Cmwlth. 2008), and *Independent Enterprises v. Pittsburgh Water & Sewer Authority*, 103 F.3d 1165 (3d Cir. 1997). In *Premier Comp Solutions*, we held that, because a disappointed bidder to a public contract has no right to receive the contract, it does not have a protectable legal interest in the award of the contract. *Premier Comp Solutions*, 949 A.2d at 384.

5

under the Fourteenth Amendment of the United States Constitution to be awarded the contract. (*Id.*) This appeal followed.

## II. ISSUE

On appeal,[6] Green Way argues that common pleas erred as a matter of law or abused its discretion when it concluded that, with regard to the County's recycling contract, Green Way did not have a substantive due process right protected by the Fourteenth Amendment to the United States Constitution, such that its claim under Section 1983 must fail.[7] Green Way maintains that it had an independent source, in the form of Pennsylvania law, separate and apart from being a disappointed bidder, that gave it a legitimate claim of entitlement to the bid for the recycling program and, thus, a protected property right. Specifically, Green Way argues that Pennsylvania law requires counties to submit waste management plans to DEP and to follow those plans, that the County's plan provided for a drop-off recycling program, and that the plan further provided for certain steps to be taken for the elimination of the recycling program. According to Green Way, the only way that the County could comply with its plan for the drop-off recycling program was by

---

[6] "Our standard of review on appeal from the grant or denial of summary judgment is de novo, and our scope of review is plenary." *Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 485 (Pa. Cmwlth. 2018) (citing *Pentlong Corp. v. GLS Capital, Inc.*, 72 A.3d 818, 823 n.6 (Pa. Cmwlth. 2013)). "Our review is limited to determining whether the trial court committed an error of law or abuse of discretion." *Clean Air Council*, 185 A.3d at 485 (citing *Wolfe v. Stroudsburg Area Sch. Dist.*, 688 A.2d 1245, 1247 (Pa. Cmwlth. 1997)). "Summary judgment is properly granted 'whenever there is no genuine issue of material fact as to a necessary element of the cause of action . . . .'" *Laich v. Bracey*, 776 A.2d 1022, 1024 (Pa. Cmwlth. 2001) (quoting Pa. R.C.P. No. 1035.2(1)). We must review the record in the light most favorable to the non-moving party. *Id.*

[7] On appeal, Green Way did not challenge common pleas' grant of summary judgment on the procedural due process issue in favor of the County and the Commissioners. (Green Way's Brief at 7, 22-26.) Accordingly, we will not address the procedural due process issue in this opinion.

accepting Green Way's bid, which was the lowest bid that the County received. Instead, the County rejected the bid and took almost two years to come into compliance with Act 101 by submitting a plan revision that was approved by DEP.

## III. DISCUSSION

"Section 1983 does not create substantive rights but, rather, is the vehicle for vindicating rights conferred in the United States Constitution or in federal statutes." *Jae v. Good*, 946 A.2d 802, 809 (Pa. Cmwlth. 2008) (citing *Urbanic v. Rosenfeld*, 616 A.2d 46, 52 (Pa. Cmwlth. 1992)). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To hold an individual liable under Section 1983, a plaintiff "must prove a deprivation of a right guaranteed by the Constitution or the laws of the United States by a defendant acting under color of [state] law." *Pettit v. Namie*, 931 A.2d 790, 801 (Pa. Cmwlth. 2007). "[T]he analysis in any [Section 1983] suit begins by identifying the specific federal constitutional right allegedly infringed[,] . . . [and] [t]he validity of the claim must then be judged by reference to the specific constitutional standard that governs that right." *Tristani v. City of Pittsburgh*, 755 A.2d 52, 56 (Pa. Cmwlth. 2000).

Green Way bases its Section 1983 claim on the Fourteenth Amendment to the United States Constitution, specifically the right to substantive due process. The Fourteenth Amendment, in relevant part, provides that "[n]o State shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1.

7

In *Nicholas v. Pennsylvania State University*, 227 F.3d 133 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit aptly summarized the law regarding substantive due process analyses.[8] The court wrote:

> The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." While on its face this constitutional provision speaks to the adequacy of state procedures, the Supreme Court has held that the clause also has a substantive component.
>
> As this Court has previously observed, substantive due process "is an area of law 'famous for controversy, and not known for its simplicity.'" Part of this conceptual confusion may arise from the fact that the fabric of substantive due process, as woven by our courts, encompasses at least two very different threads. . . .
>
> The first thread of substantive due process applies when a plaintiff challenges the validity of a legislative act. Typically, a legislative act will withstand substantive due process challenge if the government "identifies a legitimate state interest that the legislature could rationally conclude was served by the statute," although legislative acts that burden certain "fundamental" rights may be subject to stricter scrutiny.
>
> The second thread of substantive due process, as identified by this Court, protects against certain types of non-legislative state action. . . . This Court has . . . held that a non-legislative government deprivation "that comports with procedural due process may still give rise to a substantive due process claim 'upon allegations that the government deliberately and arbitrarily abused its power.'". . .
>
> To prevail on a non-legislative substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." The text of the Fourteenth Amendment speaks of "property" without qualification, and it is well-settled that state-created

---

[8] While decisions of federal district courts and courts of appeals, including those of the Third Circuit, are not binding on Pennsylvania courts, even where a federal question is involved, they have persuasive value. *Kutnyak v. Dep't of Corr.*, 923 A.2d 1248, 1250 (Pa. Cmwlth. 2007) (citing *Garber v. Dep't of Corr. Sec'y*, 851 A.2d 222, 226 n.9 (Pa. Cmwlth. 2004)). It is appropriate to follow them where the United States Supreme Court has not spoken. *Weaver v. Pa. Bd. of Prob. & Parole*, 688 A.2d 766, 772 n.11 (Pa. Cmwlth. 1997).

property interests, including some contract rights, are entitled to protection under the procedural component of the Due Process Clause. However, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." Rather, to state a substantive due process claim, "a plaintiff must have been deprived of a *particular quality* of property interest."

On past occasion, we have lamented that "the case law of this circuit and the Supreme Court provides very little guidance as to what constitutes this 'certain quality' of property interest worthy of protection under the substantive due process clause." *Nevertheless, we believe that a careful review of the case law does reveal one guiding principle: whether a certain property interest embodies this "particular quality" is not determined by reference to state law, but rather depends on whether that interest is "fundamental" under the United States Constitution.* Justice Powell explained this distinction in his . . . concurrence [in *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 229 (1985)]:

> Even if one assumes the existence of a property right[,] . . . not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution.

> The history of substantive due process "counsels caution and restraint." The determination that a substantive due process right exists is a judgment that "'certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment.'" In the context of liberty interests, this Court has been careful to examine each asserted interest to determine whether it "merits" the protection of substantive due process. "Each new claim to [substantive due process] protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed."

> . . . .

*Ewing*, 474 U.S. at 229-30 . . . (Powell, J., concurring) (citations omitted).

9

Following Justice Powell, this Circuit has adopted an approach to substantive due process that focuses on the nature of the property interest at stake. . . .

Heedful of the Supreme Court's admonition that we should exercise "utmost care whenever we are asked to break new ground in this field," we have been reluctant to extend substantive due process protection to other, less fundamental property interests. . . .

Other cases have made explicit the requirement that a property interest must be constitutionally "fundamental" in order to implicate substantive due process. In *Mauriello v. University of Medicine & Dentistry of New Jersey*, 781 F.2d 46 (3d Cir. 1986), this Court, citing Justice Powell's concurrence in *Ewing*, opined that a graduate student's interest in continued academic enrollment "bore 'little resemblance to the fundamental interests that previously had been viewed as implicitly protected by the Constitution.'" And, in *Independent Enterprises Inc. v. Pittsburgh Water & Sewer Authority*, [103 F.3d 1165 (3d Cir. 1997),] we held that a low bidder's entitlement to [a] state contract "is not the sort of 'fundamental' interest entitled to the protection of substantive due process." . . .

*Nicholas*, 227 F.3d at 138-42 (some citations omitted) (footnote omitted) (first emphasis in original) (second emphasis added).

The court in *Nicholas*, having analyzed numerous cases regarding public employment, concluded that Nicholas, a tenured university professor, did not have a fundamental property interest entitled to substantive due process protection. Rather, "Nicholas's tenured public employment [was] a wholly state-created right[ that] bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution." *Id.* at 143. The court's conclusion was consistent with the United States Supreme Court's observation that "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994).

As alluded to above, it is well settled that "one who bids on a [Pennsylvania] public contract has no legitimate expectation of receiving it until the contract is actually awarded." *Indep. Enters.*, 103 F.3d at 1178 (citing *Highway Express Lines v. Winter*, 200 A.2d 300, 303 (Pa. 1964)). In *Independent Enterprises*, the United States Court of Appeals for the Third Circuit concluded that, where an unsuccessful bidder's bids were never accepted because the contracting government entity rejected all bids without explanation and readvertised, the unsuccessful bidder "never acquired an enforceable right with respect to the contract being awarded. [The unsuccessful bidder], therefore, [had] not been deprived of a property interest that warrant[ed] procedural due process protection."[9] *Id.*

Although Green Way appears to recognize that its mere status as the lowest bidder on a contract not awarded is insufficient to confer substantive due process protections, it nevertheless argues that its status as the lowest bidder when combined with the County's failure to comply with its own waste management plan as required by Act 101 somehow triggers substantive due process protections. In making this argument, Green Way has not articulated a fundamental right stemming from the United States Constitution that would warrant extension of substantive due process protections to the situation now before the Court. Moreover, we cannot fathom how any of the statutory provisions of Act 101 (a state statute) could implicate

---

[9] In support of the contrary position, Green Way relies on the United States Supreme Court's decision in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). Green Way appears to argue that the analysis set forth in *Roth* demonstrates that the "disappointed bidder" analysis does not apply where an independent source, such as state law, gives a bidder a legitimate claim of entitlement. (Green Way's Brief at 23.) The holding in *Roth*, however, is inapplicable to the matter before this Court. *Roth* focuses on procedural due process protections and the constitutional right to a hearing before the deprivation of a property interest and does not at all address substantive due process protections relating to an individual's expectation to receive a government contract.

11

fundamental constitutional rights so as to justify expansion of substantive due process rights to one who bid on a contract that was not awarded to any bidder. Given the United States "Supreme Court's admonition that we should exercise 'utmost care whenever we are asked to break new ground in this field,'" we simply see no basis to expand substantive due process protections in this instance. *See Nicholas*, 227 F.3d at 141. For these reasons, we conclude that common pleas did not commit an error of law in determining that Green Way failed to state a substantive due process claim.

## IV. CONCLUSION

Accordingly, we affirm common pleas' decision granting summary judgment in favor of the County and the Commissioners.

_____

P. KEVIN BROBSON, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Louis Troiano d/b/a Green Way-Consulting, LLC, and Green Way Consulting, LLC, Appellants | : : : : : | |
| v. | : : | No. 1730 C.D. 2019 |
| Thomas Farley, Esq., Individually and in His Official Capacity as Solicitor of Pike County and Delaware Township, and Delaware Township, and Pike County, and Pike County Commissioners, and Richard Caridi, Individually and in His Official Capacity as Commissioner of Pike County, and Matthew Osterberg, Individually and in His Official Capacity as Commissioner of Pike County, and Karl Wagner, Individually and in His Official Capacity as Commissioner of Pike County, and John Does 1-10 | : : : : : : : : : : : : : : : : : | |

## **O R D E R**

AND NOW, this 28th day of May, 2021, the order of the Court of Common Pleas of Pike County is AFFIRMED.

_____
P. KEVIN BROBSON, President Judge