**ARA SERVICES, INC. and Araserve, Inc.**

v.

**The SCHOOL DISTRICT OF PHILADELPHIA, The Freshie Company, Arthur W. Thomas, Joseph Previty, Samuel Rubin, Ernestine Rouse, and Christine Torres-Matrullo.**

**Civ. A. No. 84–2481.**

United States District Court, E.D. Pennsylvania.

June 22, 1984.

Gregory M. Harvey, Jami Wintz McKeon, Philadelphia, Pa., for plaintiff.

Ronald A. White, Harold Cramer, Arthur W. Lefco, Philadelphia, Pa., for Freshie.

William H. Brown, III, Joseph C. Crawford, Philadelphia, Pa., for School District of Phila. and individual defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On May 14, 1984 the governing body of the School District of Philadelphia, the Board of Education, voted 5–4 to award a three-year food services contract to the Freshie Company. The plaintiffs, ARA Services, Inc. and its wholly-owned subsidiary ARASERVE, Inc., allege that this contract, known as the "Satellite Meals" contract, should have been awarded to ARASERVE, the only bidder other than Freshie, because ARASERVE submitted a lower responsible bid. The plaintiffs contend that the School District and the five Board members who voted to award the contract to Freshie violated the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, as well as state law. The plaintiffs seek preliminary injunctive relief "requiring defendant The School District of Philadelphia to proceed in all respects as if the Satellite Meals contract had been awarded by the Board to plaintiff ARASERVE, Inc.," and, after trial, permanent relief "requiring the award of the Satellite Meals contract to plaintiff ARASERVE, Inc.". The plaintiffs also seek an accounting pursuant to state law of certain alleged overpayments from the District to Freshie under the existing Satellite Meals contract.

The defendants, the School District, Freshie, and the five individual Board members who voted in Freshie's favor, have moved to dismiss the complaint on the grounds that it fails to state a claim for the violation of the plaintiffs' constitutional rights, and that, absent a viable constitutional claim, this Court should decline to exercise pendent jurisdiction over the state law claims. For the reasons which follow, the defendants' motions to dismiss will be granted without prejudice to the plaintiffs' right to transfer the pendent state law claims to the state court pursuant to 42 Pa.Cons.Stat.Ann. § 5103(b).

■ For the purposes of determining the motions to dismiss, this Court must accept the allegations in the complaint as true and construe them favorably to the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The following relevant facts are alleged. ARA Services, Inc. and ARASERVE are both taxpayers of the School District. The Satellite Meals Program, the largest single contract in dollar terms awarded by the School District, has been administered by the District since 1978. In 1978, and again in 1981, the contract was awarded to Freshie, primarily because Freshie had previously provided food services to the District and had certain licenses and United States Department of Agriculture (USDA) inspection. In 1978, a bidder lower than Freshie was disqualified for failure to have licenses and USDA inspection; in 1981 Freshie was the only bidder because the expense of the license and inspection requirement precluded other bids. The complaint alleges that

the license and inspection requirement was intended by the District to have the effect, and did have the effect, "of causing only Freshie to be eligible to bid on the Satellite Meals program."

The specifications issued in February, 1984 for the contract at issue in this case did not require existing licensing and USDA inspection, as a result of a determination by the District's purchasing staff that removing the licensing and inspection requirement would promote competitive bidding. ARASERVE and Freshie both submitted bids; ARASERVE's bid was $502,132.07 per year lower than Freshie's bid. The purchasing staff determined that both bids conformed to the specifications and, after receiving additional food samples from ARASERVE, recommended that ARASERVE be awarded the contract. The Board's acting general counsel advised the Board on April 16, 1984 and May 14, 1984 that ARASERVE's bid was the lowest responsible bid fully meeting the specifications and that ARASERVE was a qualified bidder. The Board considered these recommendations on April 16 and April 30 and reviewed tests of the food samples submitted by both bidders. On May 14, the Board voted to award the contract to Freshie.

The plaintiffs allege that the District and the Board were required by the contract specifications to award the contract to the lowest responsible bidder meeting the specifications, and were required by 7 C.F.R., Section 210.19a to adhere to the procurement guidelines set forth in Circular A–102 of the Office of Management and Budget (OMB). The Circular, attached as an exhibit to the complaint, provides that contracts such as the Satellite Meals contract must be "awarded to the responsible bidder whose bid, conforming with all the material terms and conditions of the invitation for bids, is lowest in price." OMB Circular A–102, ¶ 11(b). The Circular also provides that "any or all bids may be rejected when there are sound documented business reasons in the best interest of the program." ¶ 11(b)(2)(e).

The complaint contains five counts. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343, 42 U.S.C. § 1983 and the principle of pendent jurisdiction. Count I, against Freshie and the District, alleges that the contract was arbitrarily awarded to Freshie in spite of the fact that ARASERVE was the lowest responsible bidder meeting the specifications, and that this arbitrary award violated the right of the plaintiffs under the due process and equal protection clauses to "the non-arbitrary determination by the Board and the nine members thereof whether ARASERVE's bid was the lowest responsible bid meeting the specifications." Count II, against defendants Thomas and Previty, alleges that Thomas and Previty favored a contract award to Freshie regardless of the legal merits of the bids and regardless of whether ARASERVE submitted the lowest possible bid meeting the specifications. As a result, assisted by a School District employee named Howard Cain, they disseminated false information at the April 16 Board meeting that the ARASERVE food samples were inferior to the Freshie samples. They also allegedly concealed from the other Board members their knowledge of a prior business relationship between Mr. Cain and Freshie's sole shareholder, although they knew that this relationship prejudiced Mr. Cain's participation in the evaluation of the samples. The plaintiffs allege that Thomas and Previty acted with knowledge of, or reckless disregard of, the fact that an award to Freshie would violate the plaintiffs' due process and equal protection rights. Count III, brought against five Board members, alleges that they acted arbitrarily in voting to award the contract to Freshie, and knew that such action violated their obligation to act in a non-arbitrary fashion by awarding the contract to the lowest responsible bidder; this arbitrary action is alleged to have violated the plaintiffs' due process and equal protection rights and is alleged to have been contrary to the federal regulations governing the award of the contract. Count IV, brought against Freshie and the School District, alleges that the District violated state law by soliciting bids pursu-

ant to a specification which stated that the contract "will be awarded based on the lowest responsible bids meeting the specifications," and then failing to adhere to the lowest responsible bidder requirement throughout the bidding process. Count V, also a state law claim, seeks recovery of certain overpayments to Freshie by the District under the contract in effect from 1981 through the 1983–84 school year.

■ The plaintiffs' due process claims depend in the first instance on the existence of an interest within the protection of the Fourteenth Amendment. To determine whether due process requirements apply to the plaintiffs' alleged deprivation, "we must look not to the 'weight' but to the *nature* of the interest at stake." *Board of Regents v. Roth*, 408 U.S. 564, 571–72, 92 S.Ct. 2701, 2706–07, 33 L.Ed.2d 548 (1972). In the present case, the plaintiffs contend that Pennsylvania law provides them with a property interest in the non-arbitrary determination of their bid in accordance with the contract specifications and applicable regulations. The determination whether such a property interest exists must, as all parties agree, be decided under state law. As the Third Circuit stated in *Perri v. Aytch*, 724 F.2d 362, 364 (1983):

> [The plaintiff] claims that the dismissal from her job without a hearing deprived her of a property interest without due process of law. Property interests are created by state law. As the Supreme Court ruled in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), "A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Id.* at 344, 96 S.Ct. at 2077. In this case, we must apply the law of Pennsylvania to determine whether [the plaintiff] was deprived of a property interest.

*Bishop v. Wood*, cited in *Perri*, is instructive as to a federal court's role in determining the existence of a state-created property interest. In *Bishop*, the Su-

preme Court looked first to the state decisional law and, finding that it did not provide any "authoritative interpretation", deferred to the construction of the state law given by the two lower federal courts which had considered the issue. 426 U.S. at 344–46 & n. 7, 96 S.Ct. at 2077–78 & n. 7. *See Abraham v. Pekarski*, 537 F.Supp. 858, 867 (E.D.Pa.1982), *aff'd* 728 F.2d 167 (3d Cir.1984) ("in determining whether the plaintiff enjoyed a property right, we act much like a court attempting to apply state law in a diversity case"). *See also Jago v. Van Curen*, 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981) (Court of Appeals erred in finding existence of liberty interest where interest not provided by state law).

■■ This Court must thus determine whether, under Pennsylvania law, the plaintiffs have a "legitimate claim of entitlement" to the property interest they claim. *See Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. In making this determination, it is important to note that although a state may not arbitrarily remove property without due process, a state remains free under the due process clause to define or create property interests as it sees fit. *Holman v. Hilton*, 712 F.2d 854, 857 (3d Cir.1983) (citing *Martinez v. California*, 444 U.S. 277, 282, 100 S.Ct. 553, 557, 62 L.Ed.2d 481 (1980)). The state may also create or eliminate causes of action, immunities, and substantive defenses. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982).

In contending that they have a property interest as a result of the specifications and regulations governing the bidding procedure for the Satellite Meals contract, the plaintiffs rely heavily on *Three Rivers Cablevision v. City of Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980), and on *Teleprompter of Erie, Inc. v. City of Erie*, 537 F.Supp. 6 (W.D.Pa.1981) and 567 F.Supp. 1277 (W.D.Pa.1983), which followed the *Three Rivers* analysis. *Three Rivers*, relying in large part on *Winsett v. McGinnes*, 617 F.2d 996 (3d Cir.1980) (en banc), *cert. denied sub nom. Anderson v. Winsett*, 449

U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981), held that a bidder for a municipal contract in Pennsylvania who submits a conforming bid pursuant to requirements that the lowest responsible bid be accepted acquires a property interest protected by the Fourteenth Amendment. The process due was defined in *Three Rivers* as "the non-arbitrary exercise by the city of its discretion in making the award." 502 F.Supp. at 1131. Chief Judge Luongo of this District reached a contrary conclusion in *J.P. Mascaro & Sons, Inc. v. Township of Bristol,* 497 F.Supp. 625 (1980). *Mascaro* held that a disappointed bidder had "no claim of entitlement to a public contract based on the requirement that the contract be awarded to the lowest responsible bidder, since in Pennsylvania, that requirement is solely for the protection of the taxpayers." 497 F.Supp. at 627. This Court believes that Chief Judge Luongo accurately stated Pennsylvania law, and that the *Three Rivers* decision and its progeny gave inadequate consideration to Pennsylvania's long-standing refusal to recognize a property interest, or injury, on the part of a bidder who fails to receive a municipal contract. This Court has concluded that the plaintiffs have failed to allege the existence of a property interest which commands due process protection.

In explaining this Court's reluctance to follow the holding of *Three Rivers* that a disappointed bidder has a constitutionally-protected property interest in municipal bid procedures governed by a "lowest responsible bidder" requirement, it might be helpful to point out those portions of the *Three Rivers* opinion with which this Court does agree. First, a constitutional violation may not be made out merely by showing a breach of the provisions governing the award of the contract. As stated in *Three Rivers:*

> Recognition of the fact that the violation of a law is not, ipso facto, a deprivation of due process to all persons affected thereby is fundamental to an understanding of procedural due process. The due process clause is a narrow, personalized guarantee which only protects against the deprivation of one's own *liberty* and *property;* it is not a catch-all provision designed to promote the interest of society generally in the obedience of its laws.

502 F.Supp. at 1128. (emphasis in original). *See Logan v. Zimmerman Brush Co.,* 455 U.S. at 430, 102 S.Ct. at 1155. ("The hallmark of property ... is an *individual* entitlement grounded in state law ...") (emphasis added).

■ This Court also agrees with the holding in *Three Rivers* that a plaintiff's status as a taxpayer is insufficient "to vest in him any constitutionally-protected property interest under the due process clause." 502 F.Supp. at 1132. As will be set out more fully below, under Pennsylvania law a taxpayer has standing to challenge the award of a municipal contract to other than the lowest responsible bidder. "The rule is based on sound public policy and is solely for the protection of the taxpaying public." *R. & B. Builders, Inc. v. Philadelphia School District,* 415 Pa. 50, 52, 202 A.2d 82, 83 (1964). Under Pennsylvania law, a taxpayer's action

> permits a plaintiff, solely on the strength of his status as taxpayer, to challenge government actions which might otherwise be immune from suit because no one would have standing under traditional personal interest standards. The taxpayer bringing such an action does so as a representative and in the common interest of all the taxpayers of a governmental unit.

*Sica v. City of Philadelphia,* 77 Pa. Commw. 97, 100, 465 A.2d 91, 93 (1983) (citing *Faden v. Philadelphia Housing Authority,* 424 Pa. 273, 227 A.2d 619 (1967)). In allowing taxpayers to challenge municipal contracts, Pennsylvania has not recognized any individual entitlement such as is necessary to create a protected property interest. *Accord, National Heat & Power Co. v. City of Philadelphia,* No. 82–3179, bench op. at 24–25 (E.D.Pa. September 22, 1982) (Van Artsdalen, J.), *denial of request for preliminary injunction aff'd mem.* (3d Cir. June 1, 1983) ("a tax-

payer as such does not have the right to bring a suit under § 1983 to vindicate rights which belong to taxpayers generally").

The plaintiffs' claim to a protected property interest must rest on a "legitimate claim of entitlement" recognized by Pennsylvania law on the part of a disappointed bidder with respect to a municipal contract. As this Court recently stated in *Regional Scaffolding & Hoisting Co., Inc. v. City of Philadelphia*, No. 84–1826, slip op. at 9–10 (May 25, 1984):

> Under Pennsylvania law it is well-established that only a taxpayer has standing to enforce compliance with the requirement that public contracts be awarded to the "lowest responsible bidder." *Lutz Appellate Printers v. Com. Dept. of Property & Supplies*, 472 Pa. 28, 370 A.2d 1210, 1212 (1977); *R.S. Noonan, Inc. v. School Dist. of City of York*, 400 Pa. 391, 162 A.2d 623, 625 (1960); *Conduit & Foundation Corp. v. City of Philadelphia*, 41 Pa.Commw.Ct. 634, [641], 401 A.2d 376 (1979). The competitive bidding procedures are designed to protect the taxpayers from the wasteful or fraudulent expenditure of public funds, and create no rights in "disappointed bidders" who are not taxpayers. [citing *Lutz* and *Noonan* ].

*Accord, Sovereign Construction Co., Ltd. v. City of Philadelphia*, 439 F.Supp. 692, 694 (E.D.Pa.1977), *aff'd mem.* 582 F.2d 1276 (3d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 39 (1979) ("In short, a disappointed bidder has no cause of action under Pennsylvania law.").

As early as 1876, the Pennsylvania Supreme Court held that with respect to a municipal contract a disappointed bidder had no right "independent of that which he holds in common with the public at large." *Commonwealth ex rel. Snyder v. Mitchell*, 82 Pa. 343, 350. The Court held that the bid, until accepted, bound neither party and that "[t]he injury, if any, resulting from the rejection of [the] bid, fell upon the public and not upon [the bidder] personally" *Id.* The *Snyder* case was followed in

*R.S. Noonan, Inc. v. School District of the City of York*, 400 Pa. 391, 394, 162 A.2d 623, 625 (1960), and cited for the proposition that "a disappointed bidder has sustained no personal injury which entitles him to redress in court." *Accord, Highway Express Lines, Inc. v. Winter*, 414 Pa. 340, 200 A.2d 300 (1964) (disappointed bidder has standing to challenge a municipal contract only if also a taxpayer).

█ As the plaintiffs correctly point out, recent cases have allowed disappointed bidders who were also taxpayers to challenge public contract awards. *See, e.g., Lasday v. Allegheny County*, 499 Pa. 434, 453 A.2d 949 (1982); *American Totalisator Co. v. Seligman*, 489 Pa. 568, 414 A.2d 1037 (1980). The Court is not aware of any case holding that Pennsylvania law allows a disappointed bidder who is not also a taxpayer to challenge the award of a municipal contract. The Pennsylvania cases have emphasized that status as a taxpayer, not as a disappointed bidder, confers standing. As stated in *American Totalisator:*

> ... we have held that a *taxpayer* has standing to enjoin the improper award of a public contract and such standing is not defeated by the fact that the complaining taxpayer is also a disappointed bidder. *Lutz Appellate Printers Inc. v. Commonwealth*, 472 Pa. 28, 370 A.2d 1210 (1977). As there is no dispute concerning American Totalisator's status as a taxpayer, it clearly has standing to maintain the instant action.

489 Pa. at 574, 414 A.2d 1040 (emphasis in original). As heretofore pointed out, Pennsylvania courts allow such suits solely to protect taxpayers from the wasteful expenditure of public funds.

At oral argument the plaintiffs cited *R. & B. Builders, Inc. v. Philadelphia School District*, 415 Pa. 50, 202 A.2d 82 (1964) and *Ogden Foods, Inc. v. State Farm Products Show Commission*, 11 Pa.Commw. 435, 315 A.2d 329 (1974), in support of their contention that Pennsylvania law recognizes a property interest on the part of a disappointed bidder to a public contract. Neither case supports the contention. In

*R. & B. Builders* an injunction preventing the defendant from awarding a contract to anyone other than the plaintiff was affirmed. The action was clearly designated by the Supreme Court of Pennsylvania as a "taxpayer's action in equity", 415 Pa. at 51, 202 A.2d at 83, and the Court made clear that the statutory "lowest responsible bidder" requirement was "solely for the protection of the taxpaying public." 415 Pa. at 52, 202 A.2d at 83. *Ogden* states quite clearly that under Pennsylvania law "a disappointed bidder has no standing to request the judicial award of a public contract." 11 Pa.Commw. at 440, 315 A.2d at 332. It is clear, therefore, that under the law of Pennsylvania a disappointed bidder does not have any legally recognized interest in the award of a municipal contract.

This Court is aware that several federal courts, including the Third Circuit, have accorded standing to an unsuccessful bidder to challenge a federal contract award. *Merriam v. Kunzig*, 476 F.2d 1233 (3d Cir.), *cert. denied*, 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973); *B.K. Instrument, Inc. v. United States*, 715 F.2d 713 (2d Cir.1983). *But see People's Gas, Light & Coke Co. v. United States Postal Service*, 658 F.2d 1182, 1193 n. 7 (7th Cir.1981); *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). However, the Supreme Court of Pennsylvania has been consistent in holding that a disappointed bidder has no interest in the award of a public contract and may challenge it only as a taxpayer. This holding is dispositive of the plaintiff's due process claims. We note that jurisdiction in this case has not been bottomed on the existence of federal regulations or on the expenditure of federal funds. *See Three Rivers*, 502 F.Supp. at 1132 (cases discussing standing to bring claims based on federal procurement statutes "inapposite" to determination of the existence of a Fourteenth Amendment deprivation).

▪ Since the Pennsylvania cases granting taxpayers the right to challenge municipal contracts create no property interest in disappointed bidders, and since the existence of such a property interest cannot properly be derived from the regulations and specifications governing the procurement process in light of the Pennsylvania courts' long and consistent refusal to recognize such an interest, the plaintiffs have failed to allege the existence of a constitutionally-protected property interest. As a result, their due process claims must be dismissed.

▪ The plaintiffs also claim that the actions of the School District and the individual Board member defendants deprived them of equal protection of the laws, in violation of the Fourteenth Amendment. The function of the equal protection clause "is to measure the validity of classifications created by state laws." *Parham v. Hughes*, 441 U.S. 347, 358, 99 S.Ct. 1742, 1749, 60 L.Ed.2d 269 (1979). Since the plaintiffs have not alleged that the defendants have impinged upon a fundamental right or discriminated against a suspect class, their equal protection challenge can succeed only if they show the existence of a legislative classification not rationally related to legitimate public ends. *Murillo v. Bambrick*, 681 F.2d 898, 901 (3d Cir.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982).

▪ The first task in evaluating an equal protection claim under the rational relation test is to "identify with particularity the precise classification alleged to be irrational." *Murillo*, 681 F.2d at 906. The plaintiffs' brief in opposition to the defendants' motion to dismiss, at 19, identifies the classification they challenge as that between "the class of lowest responsible bidders who receive the contracts to which they are entitled under state law and the class of lowest responsible bidders who, through no fault of their own, are denied the contracts to which they are entitled." An equal protection claim fails when it "at most amounts to an allegation that state law was misapplied in [an] individual case." *Short v. Garrison*, 678 F.2d 364, 368 (4th Cir.1982). The Supreme Court has made clear that the misapplication of state law alone does not constitute invidious discrimi-

nation in violation of the equal protection clause; "[w]ere it otherwise, every alleged misapplication of state law would constitute a federal constitutional question." *Beck v. Washington*, 369 U.S. 541, 554, 55, 82 S.Ct. 955, 962–63, 8 L.Ed.2d 98 (1962). Although the plaintiffs have attempted to couch their claim in equal protection language, it is clear that they are, in essence, asserting that state law was misapplied in their case. This Court does not find in the equal protection clause the authority to review for constitutional error a decision of a local or state governmental body merely because the decision is alleged to be arbitrary or unlawful. The contention that the plaintiffs are members of a class of everyone who has had the law misapplied in particular cases, even assuming it were supported by some allegation in the complaint, merely suggests that others might have state law, but not federal constitutional, claims. The plaintiffs have failed to state a claim for violation of the equal protection clause of the Fourteenth Amendment.

■ The Third Circuit has held that where, as here, all federal claims are dismissed or otherwise no longer viable before trial, the Court should decline to exercise jurisdiction over pendent state claims unless "extraordinary circumstances" are present. *Shaffer v. Board of School Directors of the Albert Gallatin Area School District*, 730 F.2d 910, 912 (3d Cir.1984); *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir.1982) (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187 (3d Cir.1976)). In the present case there are no "extraordinary circumstances" which would justify this Court's retention of jurisdiction. The plaintiffs will be able upon dismissal of this action to transfer the state claims by their own action to the state court pursuant to 42 Pa.Cons.Stat.Ann. § 5103(b). *See McLaughlin v. ARCO Polymers, Inc.*, 721 F.2d 426, 431 (3d Cir.1983). Since, as has heretofore been pointed out, the Pennsylvania courts allow taxpayers such as the plaintiffs to challenge public contract awards, an adequate state procedure exists for the vindication of the interests the plaintiffs have sought to advance in this suit. An order will therefore be entered dismissing this action, without prejudice to the plaintiffs' right to transfer their state claims to the state court by complying with the transfer provisions of 42 Pa.Cons.Stat. Ann. § 5103(b).