No. 94-139

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

ISC DISTRIBUTORS, INC.,

     Plaintiff and Appellant,

  v.

MIKE TREVOR; DAVE MARSHALL; RON HEILMAN;
BRUCE SWICK; RON ARMSTRONG; SHARON RANSTROM;
DEBBIE OWEN; SHERRY HANKS; TERRY KRAMER;
ROGER FUCHS; JOHN DOES I THROUGH X, AND
JANE DOES I THROUGH X, individually and in
their representative capacity as employees
of the State of Montana,

     Defendants and Respondents.

FILED

AUG 2 8 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Michael E. Wheat, Cok, Wheat & Brown,
           Bozeman, Montana

           Thane P. Johnson, Werner, Epstein & Johnson,
           Cut Bank, Montana

       For Respondent:

           John F. Sullivan, Hughes, Kellner,
           Sullivan & Alke, Helena, Montana

               Submitted on Briefs:  June 15, 1995

                        Decided:  August 28, 1995

Filed:

_____
           Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The plaintiff, ISC Distributors, Inc., filed an amended complaint in the District Court for the Eighteenth Judicial District in Gallatin County, in which it alleged that the defendants, as employees of the State of Montana, violated its constitutional rights and acted negligently and in bad faith when they rejected its proposal for a microcomputer term contract. The District Court granted the defendants' motion for summary judgment and dismissed the amended complaint. ISC appeals from the District Court's order granting summary judgment. We affirm in part and reverse in part the judgment of the District Court.

The issues on appeal are:

1. Did the District Court err when it held that ISC had an insufficient property interest upon which to base a claim that it was denied due process of law in violation of 42 U.S.C. § 1983?

2. Did the District Court err when it held that ISC's complaint of arbitrary and unfair treatment was insufficient to form the basis for a claim that it was denied equal protection of the law in violation of 42 U.S.C. § 1983?

3: Did the District Court err when it held that ISC could not state a claim for damages based on its allegation that the defendants acted negligently or in bad faith in their administration of the Montana Procurement Act?

## FACTUAL BACKGROUND

The District Court's order of summary judgment is based on the plaintiff's uncontroverted complaint, plus additional material provided by the defendants in support of their motion for summary judgment. Since the allegations in the plaintiff's complaint were assumed to be true by the District Court for purposes of its decision, we will assume them to be true for purposes of this opinion.

On July 26, 1990, pursuant to the Montana Procurement Act found at §§ 18-4-101 to -407, MCA, the Montana Department of Administration (Department) issued a Request for Proposal for Microcomputer Term Contracts (RFP). It originally established a deadline of August 29, 1990, for responses, however later extended that deadline to September 12, 1990, by "Addendum #1." ISC prepared a proposal and submitted it prior to the September 12, 1990, deadline.

ISC was not awarded a contract by the Department. In its complaint, it alleged that, contrary to the express provisions in the RFP, the defendants issued a second addendum on September 14, 1990, extending the deadline to October 9, 1990; accepted proposals from persons who failed to meet the September 12, 1990, deadline; and eventually awarded the contract to one or more of those persons.

ISC alleged that the RFP provided for contract awards to the first and second best applicant in two categories: (1) a category

in which cost was to be the most heavily weighted factor; and (2) a category in which qualifications were to be the most heavily weighted factor. It alleged that based on the applicable criteria, it was either first or second in each category but that it was not awarded a contract because the defendants: (1) based their awards on criteria not included in the original RFP; (2) disclosed contents of plaintiff's proposal to competing offerors; (3) failed to give the plaintiff fair and equal treatment with respect to discussion and revision of its proposals; and (4) applied evaluation criteria in an arbitrary and capricious manner.

Based on these allegations, ISC claimed a right to recover damages pursuant to 42 U.S.C. § 1983 for deprivation of its property right without due process, and for violation of its right to equal protection of the law in violation of the Fifth and Fourteenth Amendments to the United States Constitution. It also asserted claims for damages based on the alleged negligence and bad faith of the defendants during their administration of the Montana Procurement Act.

The defendants moved to dismiss the original complaint pursuant to Rule 12(b)(6), M.R.Civ.P. Although that motion was briefed by both parties, it was not ruled upon by the District Court. The defendants submitted additional information, including an affidavit to which relevant portions of the RFP were attached, and moved for summary judgment. After considering briefs and arguments from both parties, the District Court granted the

4

defendants' motion for summary judgment and entered judgment for the defendants.

The District Court concluded that ISC had not stated a claim based on denial of its right to due process in violation of 42 U.S.C. § 1983 because under Montana law it had no property right which was protected. It concluded that ISC had not been denied equal protection in violation of § 1983 because, at most, it alleged a violation of the law, rather than an unfair or discriminatory classification under the law. Finally, the District Court concluded that ISC could not state a claim for damages based on the defendants' alleged negligent or improper administration of the Montana Procurement Act because § 18-4-242, MCA, provides the exclusive remedy for violations of the Act, and claims for damages are not included.

## ISSUE 1

Did the District Court err when it held that ISC had an insufficient property interest upon which to base a claim that it was denied due process of law in violation of 42 U.S.C. § 1983?

Defendants originally moved to dismiss the complaint pursuant to Rule 12(b)(6), M.R.Civ.P., for failure to state a claim for which relief may be granted. Although the motion was briefed by both parties, the District Court did not rule upon the defendants' motion. In response to ISC's amended complaint, defendants moved for summary judgment pursuant to Rule 56, M.R.Civ.P. The District Court granted that motion, but during the course of its opinion

intermittently used language which suggested that its opinion was based on Rule 12(b)(6). A Rule 12(b)(6) order would assume all facts in the complaint to be true, but conclude that based on those facts, no legally cognizable claim has been stated. In this case, a resolution of ISC's due process claim requires consideration of facts beyond those alleged in its complaint. It is necessary to consider the criteria set forth in the Department's RFP 112-B. Therefore, we will treat the District Court's decision as an order granting defendants' motion for summary judgment.

We review a district court order granting summary judgment based on the same factors considered by the district court. *Cooper v. Sisters of Charity* (1994), 265 Mont. 205, 207, 875 P.2d 352, 353. Summary judgment is not appropriate unless there are no issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56, M.R.Civ.P.

ISC contends that because its proposal satisfied the statutory criteria for the contracts which were ultimately awarded by the defendants, it had a property interest in those contracts which was denied arbitrarily and unfairly by the State in violation of ISC's right to due process, and therefore, in violation of 42 U.S.C. § 1983.

*42* U.S.C. § 1983 states:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The legal foundation for such a claim is best summarized as follows:

> To prevail. on its due process claim Curtis must prove that it had a definite liberty or property interest and that such interest was, under color of state law, abridged without appropriate process. *See Board of Regents v. Roth*, **408** u.s. **564**, 569-70, 92 S.Ct. 2701, **2705, 33** L.Ed.2d 548 (1972); *Casias v. City of Raton*, **738** F.2d 392, 394 (10th Cir. 1984) ; *Vinyard v. King*, **728** F.2d 428, 430 (10th Cir. 1984). The process requirement necessary to satisfy fourteenth amendment procedural due process comes into play only after plaintiff has shown that it has a property or liberty interest. *Vinyard*, **728** F.2d at 430 n. 5 (citing *Roth*, *408* U.S. at 569-70, 32 S.Ct. at 2705). To establish a property interest in a particular benefit, one must have a "legitimate claim of entitlement" to it. *Roth*, **408** U.S. at **571**, 92 S.Ct. at 2709. " [A]n abstract need or desire for it" or a "unilateral expectation" is insufficient. *Id.; see also Logan v. Zimmerman Brush Co.*, **4** 55 u S. **422, 102** S.Ct. 1148, 71 L.Ed.2d 265 (1982). Whether such claim of entitlement exists, and the sufficiency thereof, is determined "by reference to state law." *Bishop v. Wood*, **426** U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). However, while the typical claim of entitlement is based upon "specific statutory or contractual provisions," it need not be. *Casias*, **738** F.2d at 394. Rather, "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, **4 0 8** U.S. **593**, 601, **92** S.Ct. 2694, **2699, 33** L.Ed.2d 570 (1972).

*Curtis Ambulance v. Shawnee County Board of County Commissioners* (10th Cir . 1987), 811 F.2d 1371, 1375-76.

ISC relies on a decision from the U.S. District Court for the Western District of Pennsylvania to support its contention that it had a property interest in the contract award that it sought

7

pursuant to the Montana Procurement Act. *Three Rivers Cablevision, Inc. v. City of Pittsburgh* (W.D. Pa. 1980), 502 F. Supp. 1118. In *Three Rivers*, the plaintiffs filed suit pursuant to § 1983 for denial of its right to due process and equal protection when the City of Pittsburgh awarded a cable television contract in what that plaintiff contended was a violation of the city's procurement and awards process.

That court noted that consideration of whether due process had been denied required a determination of: (1) whether the deprivation complained of constituted a liberty or property interest; and (2) the nature of the process due the complainant. *Three Rivers*, *502* F. Supp. at 1128. It concluded that a party cannot establish a property interest in a procedure itself. Therefore, a protected interest must be found in the benefit that the complainant seeks to have regulated by that procedure, i.e., the award of the contract. *Three Rivers*, *502* F. Supp. at 1128-29. To determine whether the plaintiff established a property interest in that contract award, that court considered the local city code, which provided that the city had the right to reject all bids, but also that if a contract was awarded, it would be awarded to the lowest responsible bidder. That court concluded that a narrow-dimension property interest existed which was the right of the lowest responsible bidder who complied with the relevant specifications to receive the contract, once the city decided to award a contract pursuant to the proposal process. The court held

that the plaintiff satisfied the requisite criteria, and was the lowest responsible bidder. Therefore, that plaintiff had a property interest in the contract award. *Three Rivers*, 502 F. Supp. at 1130-32.

Based on the rationale set forth in *Three Rivers*, ISC contends that Montana's Procurement Act confers the requisite property interest to state a claim for denial of due process in violation of 42 U.S.C. § 1983. It contends that pursuant to § 18-4-304(7), MCA, the defendants' discretion for awarding the contracts in question was limited to the criteria set forth therein; that because ISC satisfied those criteria, it had a property interest in the contract award; and that because the defendants awarded contracts to others in arbitrary disregard for those criteria they violated ISC's right to due process of law.

The defendants respond that the decision in *Three Rivers* is a minority view; that the result in *Three Rivers* is inconsistent with prior Montana case law which held that unsuccessful bidders lacked standing to challenge the award of a government contract; and that even if this Court was *to* follow the *Three Rivers* rationale, it is inapplicable to the facts in this case because there was no statutory requirement that a contract be awarded to the lowest bidder.

The defendants correctly note that other jurisdictions disagree whether the District Court for the Western District of Pennsylvania was correct when it held that an unsuccessful bidder

9

can establish a property interest in a contract award which is protected by the due process clause. Compare *Pataula Electric Membership Corp. v. Whitworth* (11th Cir. 1992), 951 F.2d 1238, 1242-43; *Anderson-Myers Co., Inc. v. Roach* (D. Kan. 1987), 660 F. Supp. 106, 111; with *Szabo Food Service, Inc. v. Canteen Corp.* (7th Cir. 1987), 823 F.2d 1073, 1081; *Sowell's Meats and Services, Inc. v. McSwain* (4th Cir. 1986), 788 F.2d 226, 228 *ARA Services, Inc. v. School Dist. of Philadelphia* (E. D. Pa. 1984), 5 90 F. Supp. 622 629.

other courts have held that a government agency's reservation of the right to reject any and all bids provides sufficient discretion to preclude a constitutionally protected property interest in a contract award. *Kim Construction Co., Inc. v. Board of Trustees* (7th Cir. 1994), *14* F.3d 1243, 1246-47; *Teton Plumbing and Heating Co., Inc. v. School Dist. No. 1* (Wyo. 1988), 763 P.2d 843, 849-50.

However, based on the procurement statute with which we are concerned in this case, it is not necessary that we choose between the *Three Rivers* decision and its detractors. We have previously held in *Akhtar v. Van De Wetering* (1982), 197 Mont. 205, 218, 642 P.2d 149, .56, that a public official's discretion may prevent the creation f a property right sufficient to support *a* claim that due process as denied in violation of § 1983. In that case we recognized lat:

> TO have a property interest in a benefit a person
> clearly must have more than an abstract need or desire
> for it. He must have more than *a* unilateral expectation

10

of it.   He must, instead, have a legitimate claim of entitlement to it.

*Akhtar*, 642 P.2d at 153 (quoting *Roth, 408* U.S. at 577).

Other courts have also held that a constitutionally protected property right cannot be established based on a statutory scheme in which the governmental agency has considerable discretion to award or withhold a benefit.  *Szabo, 823* F.2d at 1080-81; *Sowell's Meats, 788* F.2d at 228-29. Absent a property interest, courts will not review the merits of a due process claim.  *Kim Construction, 14* F.3d at 1246.

Here, ISC bases its claim on Montana's procedure for receiving and considering "competitive sealed proposals" which is set forth at § 18-4-304, MCA.  Subsection (7) of that statute provides:

> The award must be made to the responsible offeror whose proposal is determined in writing to be the most advantageous to the state, taking into consideration price, including the preference in 18-1-102, and the evaluation factors set forth in the request for proposals.  No other factors or criteria may be used in the evaluation.

Advantageous is defined by Administrative Rule as "a judgmental assessment of what is in the state's best interest."  Rule 2.5.201, ARM.

The request for proposals in this *case* provided that contracts would be awarded based upon the applicant's qualifications, a technical evaluation, and a cost analysis.  However, the RFP also stated that the Department reserved the right to reject any proposal based on what it concluded were the State's "best interests."

While § 18-1-102, MCA, provides a preference to residents, that is only one factor that must be considered, and there is no record in this case which would indicate that that preference was misapplied.

Therefore, we conclude that unlike the procurement laws on which the *Three Rivers* decision was based, the defendants in this case were not required to award a contract to the "lowest bidder," nor were they absolutely required to award a contract based on any other sufficiently objective basis that a property interest was created which would support a due process claim pursuant to 42 U.S.C. § 1983. The defendants were simply required to award contracts based on what they subjectively concluded was in the State's best interest after taking into consideration various factors, including quality, expense, and technical adequacy. Neither the statutory nor regulatory criteria, nor the RFP, limited the defendants' discretion to a sufficient extent to create a property right pursuant to the *Three Rivers* decision, or any of its progeny. For that reason, and based on our prior conclusion that a property right will not exist where there is broad discretion involved in the award of a benefit, we affirm the District Court's order dismissing ISC's claim that it was denied due process of law in violation of 42 U.S.C. § 1983.

## ISSUE 2

Did the District Court err when it held that ISC's complaint of arbitrary and unfair treatment was insufficient to

12

form the basis for a claim that it was denied equal protection of the law in violation of *42* U.S.C. § 1983?

ISC contends that because it alleged that the defendants applied the Montana Procurement Act unfairly and in a discriminatory fashion, the District Court erred when it held that it had not stated a claim that it was denied equal protection in violation of 42 U.S.C. § 1983. ISC relied on the *Three Rivers* decision to support its claim.

The State responds that violations of state law, or arbitrary application of state law, do not give rise to a claim that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution has been violated. The defendants contend that the substance of ISC's claim is that the defendants have misapplied state law and that pursuant to the U.S. Supreme Court's decision in *Beck v. Washington* (*1962*), 369 U.S. 541, 554-55, 82. S. Ct. 955, 962-63, *8* L. Ed. 2d 98, 110, misapplication of state law is not an equal protection violation.

In *Three Rivers,* the Federal District Court held that unequal application of an otherwise facially neutral bidding provision clearly states a § 1983 claim for denial of equal protection. *Three Rivers, 502* F. Supp. at 1133.

However, we agree with the District Court for the Eastern District of Pennsylvania when it held in *ARA Services,* Inc., that:

> The function of the equal protection clause *'is* to measure the validity of classifications created by state

13

**laws.** ' *Parham v. Hughes*, 441 U.S. 347, 358, 99 S.Ct. 1742, 1749, 60 L. Ed. 2d 269 (1979). . . .

.        .

An equal protection claim fails when it 'at most amounts to an allegation that state law was misapplied in [an] individual case.' *Short v. Garrison*, 678 F.2d 364, 368 (4th Cir. 1982). The Supreme Court has made clear that the misapplication of state law alone does not constitute invidious discrimination in violation of the equal protection clause; '[w]ere it otherwise, every alleged misapplication of state law would constitute a federal constitutional question.' *Beck v. Washington*, 369 U.S. 541, 554, 555, 82 S.Ct. 955, 962-63, 8 L.Ed.2d 98 (1962). Although the plaintiffs have attempted to couch their claim in equal protection language, it is clear that they are, in essence, asserting that state law was misapplied in their case. This Court does not find in the equal protection clause the authority to review for constitutional error a decision of a local or state governmental body merely because the decision is alleged to be arbitrary or unlawful. The contention that the plaintiffs are members of a class of everyone who has had the law misapplied in particular cases, even assuming it were supported by some allegation in the complaint, merely suggests that others might have state law, but not federal constitutional, claims. The plaintiffs have failed to state a claim for violation of the equal protection clause of the Fourteenth Amendment.

*ARA Services*, 590 F. Supp. at 629-30.

We conclude that the plaintiff has, at most, alleged that state law was misapplied to it as an individual in an isolated incident. It does not allege that it has been discriminated against as a member of any definable class, nor that state law has been misapplied based on class distinction. For these reasons, we conclude that as a matter of law, ISC has not stated a claim for denial of its federal right to equal protection in violation of 42 U.S.C. § 1983, and we affirm the District Court's order granting

14

summary judgment to the defendant which dismissed ISC's claim which was based on the Equal Protection Clause.

## ISSUE 3

Did the District *Court err* when it held that ISC could not state a claim for damages based on its allegation that the defendants acted negligently or in bad faith in their administration of the Montana Procurement Act'?

The District Court held, and the defendants ask that we affirm, that ISC cannot recover damages based on its allegation that the defendants administered the Montana Procurement Act in bad faith and negligently because the exclusive remedy for misapplication of the Act's provisions is *§ 18-4-242*, MCA. *However*, to do so would require that we ignore the plain language of the Act,

Although § 18-4-242, MCA, is entitled "Remedies Prior to and After Award,' we have held that the title of a statute is subordinate to its text in determining its effect. *Manufacturing Acceptance Corp. v. Krsul (1968)*, 151 Mont. 28, *35, 438* P.2d 667, 671. The text of § -242 does not, in fact, provide any remedy to ISC. Instead, it provides in relevant part that:

> (1) *If a* solicitation or award of *a contract* is in violation of law, the department may apply the remedies provided in subsections (2) and (3).
> (2) If Prior to award it is determined that a solicitation or proposed award of a contract is in violation of law, the solicitation or proposed award must be:
> (a) canceled; or
> (b) revised to comply with the law.

*15*

(3)    (a) If after an award it is determined that a solicitation or award of a contract is in violation of law and the person awarded the contract has not acted fraudulently or in bad faith, the contract may be:
(i)   ratified   and   affirmed,   provided   i is determined that doing so is in the best interests of the state; or
(ii) terminated, and the person awarded the contract must be compensated for the actual expenses reasonably incurred under the contract, plus a reasonable profit, prior to the termination.
(b) If after an award it is determined that a solicitation or award of a contract is in violation of law and the person awarded the contract has acted fraudulently or in bad faith, the contract may be:
(i) declared void; or
(ii) ratified and affirmed if such action is in the best interests of the state, without prejudice to the state's rights to appropriate damages.

(Emphasis added.)

Section 18-4-122, MCA, which lists the purposes of the Montana Procurement Act states, on the other hand, that:

The underlying purposes and policies of this chapter are to:
. .
(5) 'ensure the fair and equitable treatment of all persons who deal with the procurement system of the state;
. . . .
(8) provide safeguards for the maintenance of a procurement system of quality and integrity.

Toward that end, the Legislature has provided in § 18-4-131, MCA, that:

(1) Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the Uniform Commercial Code, the law merchant, and law relative to capacity to contract, agency, fraud, misrepresentation, duress, coercion, mistake, or bankruptcy, supplement the provisions of this chapter, except that writs of mandamus and prohibition issued pursuant to Title 27, chapters 26 and 27, may not be used as a remedy for violations of this chapter.

16

> (2) This chapter requires all parties involved in the negotiation, performance, or administration of state contracts to act in good faith.

The District Court held that § 18-4-242, MCA, displaced the remedies provided for in § 18-4-131, MCA. However, when interpreting statutes, courts may not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA. Likewise, courts must construe a statute based on its plain meaning. *State ex rel. Woodahl v. District Court* (1973), 162 Mont. 283, 292, 511 P.2d 318, 323.

The plain language of § 18-4-242, MCA, does not suggest that it was intended to displace other remedies for abuse of the procurement process which may be available based on principles of law and equity. In fact, the plain language of § -242 suggests the contrary. It limits remedies to those which may be taken by "the department." It provides no remedy for irregularities which may have been engaged in by "the department." Furthermore, the remedies provided for in § -131 are much more expansive than those provided for in § -242. It makes no sense that the Legislature would wipe them out several sections later without ever expressly stating that it had done so. Finally, because § -242 provides no method of enforcement by individuals who have been adversely affected by misapplication of Montana's Procurement Act, it does nothing to further the purposes of the Act which are set forth in § 18-4-122(5) and (8), MCA. It would be impossible to "ensure the fair and equitable treatment of all persons who deal with the procurement system" if the only party capable of enforcing the

17

system's requirements was the party accused of abusing those requirements.

The defendants argue, and the District Court agreed, that because of our prior decisions in *Baker v. State* (1985), 218 Mont. 235, 707 P.2d 20, and *State ex rel. Stuewe v. Hindson* (1912), 44 Mont. 429, 120 P. 485, ISC lacks standing to sue for damages under the Montana Procurement Act. However, neither case is applicable. *Stuewe* did not involve a claim for damages; both cases involved claims for mandamus, which are specifically barred by § 18-4-131, MCA; and neither involved a claim under Chapter 4 of the Montana Procurement Act, which specifically preserves "legal and equitable remedies."

*Stuewe* involved a bid submitted to the Lewis and Clark County Commissioners to provide services for care of the poor, sick, and infirm. William Stuewe was an unsuccessful bidder and brought an action in mandamus to compel the Board to rescind its award to another bidder and award the contract to him. We held that because the County had the authority to reject all bids, or any bid, there was no absolute duty on the part of the Board to accept any bid, and therefore, that mandamus will not lie to compel the County to act. We based that holding on our conclusion that mandamus is only available to enforce a well-defined right for which there is no other specific legal remedy.

In *Baker*, the State Division of Architecture and Engineering invited bids for the construction of the National Guard Armory in Harlowton pursuant to Title 18, Chapter 2, of the Montana Code

18

Annotated. Baker was an unsuccessful bidder and brought an action to have the award to another set aside and the contract awarded to him. He also sought damages for misapplication of the construction contract statutes. We held, based on our prior decision in *Sletten Construction Co. v. City of Great Falls* (1973), *163* Mont. 307, 516 P.2d 1149, that "the discretion of the agency to award public work contracts to the lowest bidder is not subject to judicial review under normal circumstances" absent "bad faith, fraud, or corruption of the department . . . ." *Baker, 707* P.2d at 24.

*Sletten* stood only for the broad general principle that an unsuccessful bidder has no standing in mandamus or otherwise to control the exercise of discretion by a governmental agency for awarding contracts to one of several bidders. *Baker* is distinguishable from this case for several reasons: (1) Chapter 2 of Title 18 pertains to construction contracts, rather than the Montana Procurement Act, and includes no provision comparable to § *18-4-131*, MCA, which preserves legal and equitable remedies; (2) mandamus is specifically precluded by § 18-4-131, MCA, and therefore, not sought by ISC; (3) ISC's claim is based on an alleged failure to act in good faith, which is specifically required by § 18-4-131(2), MCA. As noted by the Court, bad faith was not alleged in *Baker.*

Section 18-4-131(1), MCA, provides that "the principles of law . . . supplement the provisions" of the Montana Procurement Act, and subsection (2) requires that all parties involved in the

19

administration of the Act "act in good faith." ISC's claim for damages based on its allegation of negligence is founded in principles of law; and its claim based upon failure to act in good faith is based on an alleged violation of the obligation specifically imposed on the defendants by statute. We conclude that these provisions of the Montana Procurement Act are not displaced by the later provision in § 18-4-242, MCA, which authorizes the Department to pursue rescission-like remedies where it concludes that a solicitation has been submitted or a contract awarded in violation of law. Neither are these remedies precluded by our prior decisions in *Stuewe* and **Baker**. For these reasons, the judgment of the District Court which dismissed ISC's claims based on negligence and bad faith is reversed, and this case is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We concur:


_____
Chief Justice

_____
Justices

District Court Judge Marge Johnson
sitting for Justice James C. Nelson

Justice Fred J. Weber dissents as follows:

I concur in the opinion's resolution of Issues 1 and 2. I dissent on Issue 3, in which the opinion concludes that the District Court erred when it held that ISC could not state a claim for damages based on its allegations that the defendants acted negligently or in bad faith in their administration of the Montana Procurement Act.

Under Issue 3, the opinion sets forth the text of § 18-4-242, MCA, in "relevant part." Such relevant part does not include subsection (4) which I believe to be critical to the decision. Following is the complete text of § 18-4-242, MCA:

18-4-242. Remedies prior to and after award. (1) If a solicitation or award of a contract is in violation of law, the department may apply the remedies provided in subsection (2) and (3).
(2) _If prior to award_ it is determined that a solicitation or proposed award of a contract is in violation of law, the solicitation or proposed award must be:
(a) canceled; or
(b) revised to comply with the law.
(3) (a) _If after an award_ it is determined that a solicitation or award of a contract is in violation of law and the person awarded the contract has not acted fraudulently or in bad faith, the contract may be:
(i) ratified and affirmed, provided it is determined that doing so is in the best interests of the state; or
(ii) terminated, and the person awarded the contract must be compensated for the actual expenses reasonably incurred under the contract, plus a reasonable profit, prior to the termination.
(b) _If after an award_ it is determined that a solicitation or award of a contract is in violation of law and the person awarded the contract has acted fraudulently or in bad faith, the contract may be:
(i) declared void; or
(ii) ratified and affirmed if such action is in the bet interests of the state, without prejudice to the state's rights to appropriate damages.
(4) _In the event the matter is reviewed by a court, the court may apply the same remedies provided in subsections (2) and (3)._ (Emphasis supplied.)

22

In analyzing the foregoing statute, the opinion states that the plain language of § -242 does not suggest that it was intended to displace other remedies for abuse of the procurement process which may be available based upon principles of law and equity. It incorrectly states that § -242 limits remedies to those which may be taken by "the department." Finally, it states that because the section provides no method of enforcement by individuals who have been adversely affected by the Act, it does nothing to further the purposes of the Act. I disagree with those conclusions when the entire Act, and in particular subsection (4) of § -242, is considered. Subsection (4) provides that in the event the matter is reviewed by a court, the court may apply the same remedies provided in subsections (2) and (3). Clearly a remedy was provided to the plaintiff in this case which could have sued under § -242 to enforce the remedies therein provided. As a result, I disagree with the conclusion that it is impossible to ensure a fair and equitable treatment if the only party capable of enforcing the requirements was the party accused of abusing those requirements-- that conclusion is negated by subsection (4).

I will analyze § 18-4-242, MCA, taking into consideration the allegations on the part of the plaintiff. Under the negligence count of the amended complaint, the plaintiff in substance alleged that the defendants failed to exercise ordinary care in awarding a contract under the RFP. In substance, plaintiff contended that defendant Swick issued a second addendum on September 14, 1990, two days after the date of the deadline for receipt of proposals which "extended" the deadline for proposals to October 9, 1990.

23

Apparently that is a key part of the negligent conduct claim, In addition, plaintiff pleaded that the defendants failed to award the contract because of their conduct in using improper evaluation criteria, failed to ensure nondisclosure of the contents of plaintiff's proposal, intentionally discriminated against the plaintiff and applied evaluation criteria to plaintiff's proposal in an arbitrary and capricious manner. In a similar manner, in count VI of its complaint, plaintiff alleged that the action of the defendants in sending plaintiff the RFP gave rise to a justifiable expectation on the part of the plaintiff that defendants would act reasonably and negotiate in good faith, pursuant to and required by § 18-4-131, MCA. Defendants' conduct was unreasonable and a breach of their duty to negotiate in good faith.

I will discuss the foregoing aspects of the complaint as provided by the Act. In doing so, I will refer to the right of both the department and the court to apply the remedies of § -242. Subsection (1), (and by inference made in subsection (4)) of § - 242, provide that if an award of a contract is in violation of law, the department or the court may apply the remedies in subsection (2) or (3). Clearly the allegations of negligence and bad faith in the plaintiff's complaint are in violation of the principles of law and equity and the law relative to the capacity to contract as well as the law of fraud, all referred to in § 18-4-131, MCA. As a result, under subsection (2) of § -242, if <u>prior to the award,</u> the plaintiff had objected, either the department or the court could have determined that the proposed award was in violation of law at

24

which time the proposed award would have to have been cancelled or revised to comply with law.

In **a similar** manner, under subsection (3)(a) of § -242, if <u>after</u> an award was made, the plaintiff had made the same complaints, then either the department or the court could have determined that the award was in violation of law. At that point, if the party awarded the contract had not acted either fraudulently or in bad faith--none of which is alleged in the complaint--the contract may be ratified and affirmed by either the department or the court if it is determined that it is in the best interests of the state; or, either the department or the court may terminate the contract and the party awarded the contract would be entitled to actual expenses as listed.

On the other hand, under subsection (3)(b), if after the award was made, either the department or the court determined that the award was in violation of law and that the party awarded the contract had acted fraudulently or in bad faith, the department or the court may declare the contract void or ratify or affirm the contract if it is in the best interests of the state without prejudice to the state's rights to appropriate damages. I here emphasize that the only provision in § -242 with regard to damages is in subsection (3)(b), where the State is given the right to appropriate damages if the person awarded the contract has acted fraudulently or in bad faith.

Clearly § -242 gave the plaintiff the right to seek to enforce its terms by plaintiff's request made to the department, or in the alternative, by its request made to the District Court. Plaintiff

25

chose not to do so. As a result, plaintiff has disregarded the provisions of § -242.

The District Court pointed out that plaintiff's argument with regard to its claim for damages is misplaced because the principles of law and equity which supplement the Procurement Act do not include damage remedies, and § 18-4-131(1), MCA, begins with the phrase which states that the general provisions of law and equity apply "unless displaced by the particular provisions of this chapter . . ." The District Court correctly concluded that § 18-4-242, MCA, provides such a displacement. Clearly the remedies set forth in that section apply both prior to and after award of a contract. The District Court pointed out that plaintiff contended that Baker recognizes a damage award is allowed in cases in which bad faith is alleged. First of all we point out that under Baker v. State (1985), 218 Mont. 235, 239, 707 P.2d 20, 23, this Court stated:

> The policy behind the bidding statute also precludes any finding of standing for Baker to bring the action. The statute's primary function is to benefit the citizens. This premise is stated in 72 C.J.S., suppplement, Public Contracts § 8 (1975) :

> "Competitive bidding statutes are primarily intended for the benefit of the public rather than for the benefit or enrichment of bidders, and consideration of advantages or disadvantages to bidders must be secondary to the general welfare of the public . . ."

Baker then quoted from Stuewe v. Hindson (1912), 44 Mont. 429, 437, 120 P. 485, 487, where this Court stated:

> The provisions of law for letting contracts of this character to the lowest bidder is for the benefit of the public, and does not confer any right upon the lowest bidder as such. (Emphasis in original.)

26

Finally, in <u>Baker,</u> this Court made the following additional statements:

> In addition, we have held that the discretion of the agency to award public work contracts to the lowest bidder is not subject to judicial review under normal circumstances. <u>Sletten Construction Co.</u> . . . We will not make a contract for the parties. Nor is this Court prepared to venture that Baker would have been awarded the contract if Edsall was not the successful bidder. In the absence of any showing of bad faith, fraud, or corruption of the Department, <u>the exercise of discretion will not be disturbed.</u> (Emphasis supplied.)

<u>Baker,</u> 707 P.2d at 24. I do not find allegations in the plaintiff's complaint sufficient to demonstrate that there was bad faith, fraud or corruption by the Department which required that the exercise of the Department's discretion should be disturbed. In any event, even if there were such bad faith, fraud or corruption, under the specific provisions of the Procurement Act here applicable, the proper remedy was under § -242, as previously discussed.

I further disagree with the opinion's conclusion that <u>Baker</u> is distinguishable because Chapter 2 of Title 18, pertaining to construction contracts, is not comparable to the Montana Procurement Act. Under the quotation from Chapter 2, Title 18 in <u>Baker,</u> it is clear that the contract must be awarded to the lowest bidder, a much more restrictive provision than that applicable in the Montana Procurement Act.

I would therefore affirm the conclusion of the District Court that competitive bidding statutes are intended for the benefit of the public rather than for the benefit or enrichment of bidders and that to allow damage remedies would require that the public be forced to pay twice for the same goods and services. The District

27

Court properly concluded that the appropriate remedies are the rescission-like remedies contained in § 18-4-242, MCA. I agree with that conclusion of the District Court. I would therefore affirm the order of the District Court which held that the amended complaint failed to state a claim upon which relief could be granted.

_____
Justice

Chief Justice J.A. Turnage concurs in the foregoing dissent.

_____
Chief Justice

District Court Judge Katherine R. Curtis, sitting for Justice W. William Leaphart, concurs in the foregoing dissent.

DISTRICT JUDGE MARGE JOHNSON, specially concurring:

I specially concur in the opinion authored by Justice Trieweiler in this matter. I agree with the reasoning in the majority opinion, but wish to add the following points in response to the dissenting opinion.

Sections 18-4-131, M.C.A., and 18-4-24.2, M.C.A., were enacted into law in 1983 as part of the same Act of the Legislature. The interpretation of § 18-4-242 urged by the dissenters makes § 18-4-131(1) completely unnecessary and of no effect. The dissenters argue that § 18-4-242, M.C.A., affords the exclusive remedies for violations of the Montana Procurement Act. Section **18-4-131(1)** provides:

> Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the Uniform Commercial Code, the Law Merchant, and law relative to capacity to contract, agency, fraud, misrepresentation, duress, coercion, mistake, or bankruptcy, supplement the provisions of this chapter, except that writs of mandamus and prohibition issued pursuant to Title **27,** Chapters 26 and 27, may not be used as a remedy for violations of this chapter.

Under the interpretation offered by the dissenters, § 18-4-242 completely displaces other provisions of law itemized in § 18-4-131, and also renders the final clause of that provision unnecessary, since § 18-4-242 clearly does not permit either the writs of mandamus or prohibition to be used for violations of the Montana Procurement Act.

It is a fundamental rule of statutory construction, which has long been endorsed by this Court, that it is the duty of this Court to interpret individual sections of an act in such a manner as to ensure coordination with the other sections of the act. Howell **v.** State, 263 Mont. 275, 286-287, 868 **P.2d** 568 (1994). This Court

must presume that the legislature would not pass meaningless legislation, and must harmonize statutes relating to the same subject, as much as possible, giving effect to each. Crist v. Segna, 191 Mont. 210, 212, 622 **P.2d** 1028 (1981). This Court must construe subsections of a statute in a manner that will give effect to them all, reconciling conflicting or apparently conflicting statutory provisions and making them all operative in accordance with the legislative intent, insofar as it is possible to do so. Schendel v. Board of Adjustment, 237 Mont. 278, 284, 774 **P.2d** 379 (1989).

To hold that § 18-4-242, M.C.A., provides the exclusive remedies afforded by law under the Montana Procurement Act **for** violation of that Act, renders § **18-4-131(1),** M.C.A., completely unnecessary. If the legislature intended to permit no other remedies, the legislature could and should have omitted § 18-4-131, M.C.A. It did not choose to do so, and this Court has no authority to do so. By doing so, this Court would be substituting its own judgment for that of the legislature.

Additionally, § 18-4-242, M.C.A., by its own terms permissive rather than mandatory, and is not intended to provide exclusive remedies. Section **18-4-242(4)** states that: "In the event the matter is reviewed by a court, the court **may** apply the same remedies provided in (2) and **(3)."** If the legislature intended the remedies of § 18-4-242, M.C.A., to be exclusive, it could easily have used the word **"shall"** or "must", which are interpreted to be mandatory, rather than permissive. Gaustad v. City of Columbus, 265 Mont. 279, 381-382, 877 **P.2d** 470, 471 (1994) (The word "may" is commonly understood to be permissive or discretionary; in contrast,

"shall" is understood to be compelling or mandatory.) The use of the permissive language in this statute, coupled with the enactment at the same time of § 18-4-131, M.c.A., which lists a number of other possible remedies, refutes the dissent's claim that § 18-4-242, M.C.A., completely displaces those provisions listed in § 18-4-131(1), M.C.A.

Finally, the dissent also argues that the Plaintiffs have no standing 218 Mont. 235, 707 P.2d 20 (1985). It is important to note that the Baker decision was not decided under the Montana Procurement Act, but rather under an act that does not include the kinds of provisions found in § 18-4-122, M.C.A., stating the specific purposes of the Montana Procurement Act. Baker was therefore decided under common law principles of longstanding in this state which are appropriately applied absent any legislative statement of purpose to the contrary. Under those common law principles, an unsuccessful bidder, regardless of the reason for the lack of success, lacks standing to bring an action challenging the bidding process. Section 18-4-122, M.C.A., provides the underlying purposes and policies of the Montana Procurement Act, which include the purposes to:

> (4) Provide for increased public confidence in the procedures followed in public procurement;

> (5) Ensure the fair and equitable treatment of all persons who deal with the procurement system of the state;

> . . .

> (8) Provide safeguards for the maintenance of a procurement system of quality and integrity. [Emphasis added].

By enacting these specified purposes into law for bidding procedures which occur under the Act, the legislature has adopted

31

purposes not consistent with the **common** law rule denying "persons who deal with the procurement system of the state" any standing to challenge violations of the Act. Section 1-2-103, M.C.A., requires that statutes which are in derogation of the common law must be liberally construed with a view to effect their objects and to promote justice. Where a conflict arises between the common law and a statute, the common law must yield.. <u>Hansen v. Utah State Retirement Board</u>, ___ Utah ___, 652 **P.2d** 1332, 1337 (1982). Given the purposes enunciated in § 18-4-122, M.C.A., there is no basis for applying the common law rule applied in <u>Baker</u>, and denying this plaintiff standing to proceed.

_____
Marge **Johnson,** District Court Judge

We concur :

_____
Justice Terry N. Trieweiler

_____
Justice Karla M. Gray

32

August 29, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael E. Wheat, Esq.
Cok, Wheat & Brown
P.O. Box 1105
Bozeman, MT 59771-1106

Thane P. Johnson
Werner, Epstein & Johnson
P.O. Box 428
Cut Bank, MT 59427

John F. Sullivan, Esq.
Hughes, Kellner, Sullivan & Alke
P.O. Box 1166
Helena, MT 59624-1166

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy